UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                              :     Chapter 11
                                                    :
VARGAS REALTY ENTERPRISES INC.,    :
et al.,                                             :     Case No. 09-10402 (SMB)
                                                    :     (Jointly Administered)
                           Debtors.        :
------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## DENYING DEBTORS' MOTION FOR REARGUMENT

**A P P E A R A N C E S:**

CARL E. PERSON, ESQ.
Attorney for the Debtors
325 West 45th Street – Suite 201
New York, New York 10036

KRISS & FEUERSTEIN LLP
Attorneys for CFA W111 STREET, L.L.C.
360 Lexington Avenue, 12th Floor
New York, New York 10017

       Jerold C. Feuerstein, Esq.
          Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

       The affiliated debtors[1] filed this motion for reargument of the Court's prior determination that each owned property that met the definition of "single asset real estate" under 11 U.S.C. § 101(51B). (<u>Application in Support of Motion for Reargument of Motion for Determination of Whether Debtors Are in Category of Single Asset Real Estate and for an Order That the Issue Be Tried at the Trial of the Adversary Proceeding</u>

---

[1]    The debtors include Vargas Realty Enterprises, Inc. ("Vargas"), Noble Realty Corp. ("Noble"), V & R Realty Corp. ("V & R") and E.R. Properties, Inc. ("E.R.").

Scheduled for July 15, 2009, dated June 16, 2009 ("Reargument Motion"))(ECF Doc. # 67.) For the reasons that follow, the Reargument Motion is denied.

## BACKGROUND

The material facts are not in dispute. Each of the debtors owns a residential apartment building on West 111th Street in Manhattan (the "Properties").[2] The Properties are contiguous. Each building consists of four or more apartments or residential units. Victor Vargas owns all of the outstanding shares in each of the debtors. Vargas acquired the Properties at different times during a period that spanned 1979 to 1999. (Declaration of Victor Vargas in Support of Debtors' Motion for Reargument of Motion for Determination of Whether Debtors Are in Category of Single Asset Real Estate and for an Order That the Issue Be Tried at the Trial of the Adversary Proceeding Now Scheduled for July 15, 2009, dated June 16, 2009, at ¶ 2 ("Vargas Reargument Declaration"))(see ECF Doc. # 67.)

The Properties allegedly secure an approximate $8 million loan made by CFA W111 Street, L.L.C. ("CFA"). The debtors contend that the loan and mortgage are invalid and unenforceable for reasons not relevant to the motion. They each filed a chapter 11 petition on January 29, 2009, to stay CFA's efforts to foreclose its mortgage.

---

[2] The Properties include: (1) 136 West 111th Street, NY, NY, owned by E.R.; (2) 140 West 111th Street, NY, NY, owned by Vargas; (3) 144 West 111th, NY, NY, owned by V&R; and (4) 148 West 111th Street, NY, NY, which is owned by Noble.

**A.     The Original Motion**

On April 7, 2009, CFA moved, inter alia, for relief from the automatic stay and for a declaration that its mortgage was secured, in each case, by "single asset real estate" within the meaning of Code § 101(51B). That section states:

> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.[3]

CFA's prima facie case included the following undisputed facts. First, each debtor owned a single asset – real property consisting of a residential apartment building of at least four rental units. Second, each Property generated substantially all, if not all, of the gross income earned by that debtor through rent paid by its tenants. Third, no debtor conducted any other business activity on its Property that was not incidental to ownership of the Property and the generation of rental income. (Application in Support of Motion for Relief from Automatic Stay, Appointment of a Receiver, and Declaration of the Court Regarding Designation as Single Asset Real Estate, dated Apr. 7, 2009 ("Original Motion"))(ECF Doc. # 39.)

The debtors opposed the Original Motion, but did not offer any facts to controvert the showing that CFA's mortgage was secured by the "single asset real estate" owned by each debtor. Instead, they argued in their memorandum of law that the four debtors operated as one, i.e., a single debtor that operated four properties. They contended that the Properties were operated from a single location, they were jointly financed based on

---

[3]     The Original Motion was presumably intended to set the stage for a second motion for relief from the stay pursuant to 11 U.S.C. § 362(d)(3).

3

their combined rent rolls, and each of the Properties served as security for the other Properties. (<u>Memorandum of Law in Opposition to the Motion By CFA W 111 Street LLC to Vacate Stay and for Other Relief</u>, dated May 26, 2009 ("<u>Debtors' Opposition</u>"), at 1-2)(ECF Doc. # 54.) Their memorandum did not cite any case law on the "single asset real estate" designation issue.

The Court heard the Original Motion on June 9, 2009. It scheduled an evidentiary hearing with respect to the branch of the motion seeking relief from the stay (or alternatively, adequate protection), and ruled from the bench that each debtor's real property qualified as "single asset real estate." Assuming the truth of the unsubstantiated facts set forth in the debtors' opposition did not alter the conclusion that each debtor operated from its own building where it earned all of its income. The common management and common mortgage did not change what each debtor owned, or the nature of its business or source of income.

### B.    The Motion for Reargument

The debtors contend in the Reargument Motion that the Court did not consider or overlooked certain arguments. First, they now maintain that they are engaged in activities other than renting apartments. They manage and lease the Properties, and maintain and improve the apartments – they do not hire outside contractors – to upgrade the value of the buildings and increase the rent rolls. Planned improvements include installing parquet floors, new kitchen cabinets, a new stove and a new refrigerator; painting walls and rooms, repairing a boiler; and carving out space for an additional rental unit in each building. (<u>Vargas Reargument Declaration</u>, at ¶¶ 4, 9.) Vargas claims that this work will increase annual rent rolls in each building by about $144,000.00. (<u>Id.</u>

4

at ¶ 9.) According to the debtors, this in-house work means they "are in the additional business of a general contractor." (Reargument Motion, at ¶ 2.)

Second, the debtors contend that the Court overlooked In re Club Golf Partners, L.P., No. 07-40096-BTR-11, 2007 WL 1176010 (E.D. Tex. Apr. 20, 2007), a case, they believe, supports their position. The decision is discussed below.

## DISCUSSION

Local Bankruptcy Rule 9023-1(a) governs a motion for reargument. It provides, in pertinent part, as follows:

> A motion for reargument of a court order determining a motion shall be served within 10 days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within 10 days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion. The motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered.

The movant must show that the court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." In re Best Payphones, Inc., No. 01-15472, 2008 WL 2705472, at *3 (Bankr. S.D.N.Y. July 3, 2008); Anglo American Ins. Group, P.L.C. v. CalFed Inc., 940 F. Supp. 554, 557 (S.D.N.Y. 1996)(quoting Morser v. AT & T Info. Sys., 715 F. Supp. 516, 517 (S.D.N.Y.1989)); accord Banco de Seguros del Estado v. Mut. Marine Offices, Inc., 230 F. Supp. 2d 427, 428 (S.D.N.Y.2002), aff'd, 344 F.3d 255 (2d Cir. 2003); Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368 (S.D.N.Y.1999); Farkas v. Ellis, 783 F. Supp. 830, 832-33 (S.D.N .Y.), aff'd, 979 F.2d 845 (2d Cir.1992). Alternatively, "the movant must demonstrate the need to correct a clear error or prevent manifest injustice." Griffin

5

Indus., 72 F. Supp. 2d at 368 (internal quotation marks and citations omitted); accord Banco de Seguros del Estado, 230 F. Supp. 2d at 428.

The rule permitting reargument is strictly construed to avoid repetitive arguments on issues that the court has already fully considered. Best Payphones, Inc., 2008 WL 2705472, at *3; Griffin Indus., 72 F.Supp.2d at 368; Monaghan v. SZS 33 Assocs., L.P., 153 F.R.D. 60, 65 (S.D.N.Y.1994); Farkas, 783 F. Supp. at 832. In addition, parties cannot advance new facts or arguments because a motion for reargument is not a mechanism for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Best Payphones, Inc., 2008 WL 2705472, at *3; Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir.1998)(discussing Rule 59); accord Griffin Indus., 72 F.Supp.2d at 368 (discussing motions for reargument).

The debtors have failed to show that the Court overlooked any factual material or controlling legal arguments when it determined that each debtor owned "single real estate asset." Their opposition to the Original Motion essentially contended that the Properties were operated and financed as if they were one entity, and should, therefore, be viewed as a multi-propertied entity. The debtors never contended that they were also in the "general contracting" business, and hence, the Court did not fail to consider the argument. Similarly, the debtors are hard-pressed to maintain that the Court overlooked Club Golf Partners – or any other decision – since their original motion did not cite any decisions on this point. See Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988).

6

The debtors have also failed to show that the Court committed a clear error or that its decision was manifestly unjust. Vargas purchased each of the Properties separately over a twenty year span, (Vargas Reargument Declaration, at ¶ 4), and each Property is situated on its own tax lot. (See Declaration of Carl E. Person in Opposition to the Motion by CFA W 111 Street LLC to Vacate Stay and For Other Relief, dated May 26, 2009, at ¶ 18)(ECF Doc. # 52.) Vargas opted to create four separate corporations, each owning only one of the Properties. Moreover, each Property is a rental building that derives substantially all if not all of its income from the rent paid by the tenants.

Even if all of the debtors and the Properties were viewed as a single entity based on common management and the common mortgage – the thrust of the debtors' opposition to the Original Motion -- the result would not change. The definition of "single asset real estate" is not limited to a single piece of real estate; it includes multiple pieces of real estate operated as a single project by a debtor. See 11 U.S.C. § 101(51B); In re Webb MTN, LLC, Case No. 07-32016, 2008 WL 656271, at *4 (Bankr. E.D. Tenn. Mar. 6, 2008)("[T]he definition includes not only single 'properties,' but also encompasses single 'projects,' so the fact that a debtor may hold title to more than one 'property' does not exclude it from being single asset real estate."); In re Philmont Dev. Co., 181 B.R. 220, 224-25 (Bankr. E.D. Pa. 1995)(definition of "single asset real estate" encompassed a limited partnership that owned and operated multiple properties as a "single project"). The debtors' argument, which essentially comes down to an attempt to pierce their own corporate veil, suggests that they are a single entity that operates four contiguous properties as a "single project." The Properties would still satisfy the definition of "single asset real estate" under 11 U.S.C. § 101(51B).

7

Next, the debtors' new contention that they are engaged in the "general contracting" business borders on the frivolous. The debtors repair and improve the Properties in-house instead of hiring an outside contractor. The debtors do not sell their contracting services to third parties. Instead, everything they do is aimed at increasing the rent roll in each building. (See Vargas Reargument Declaration, at ¶¶ 4-9.)

Every parcel of real property requires some work to maintain or enhance its value. The owner must mow the grass and fix leaks. If these incidental activities transmuted a "single asset real estate" into a gardening or plumbing, there would be no such thing as a "single asset real estate" bankruptcy. The "other business" the debtors identified is "intrinsic to owning and developing the real estate and not one where the debtor generates income from other activities not incidental thereto." In re Kara Homes, 363 B.R. at 406.

Finally, Club Golf Partners, which reached a different result based on distinguishable facts, actually supports this conclusion. There, the debtor operated a golf course, and the question was whether its property met the definition of "single asset real estate" under 11 U.S.C. § 101(51B). Focusing on the numerous commercial activities involving the sale of goods and services that were carried out on the property, the court concluded that the debtor was conducting substantial business other than the operation of the property and activities incidental thereto:

> 15. In the case at bar, the Debtor owns real estate but also operates a variety of revenue-producing activities on it. It employs third-party employees, without whom little or nothing of a revenue-producing nature would happen on the land; and it enjoys revenues from a variety of commercial activities on the property, including selling memberships, charging fees or prices for access to the public golf course; use of a golf cart; use of the driving range; use of the tennis courts; merchandise in its

8

> pro shop; food and beverages (beer, wine, and nonalcoholic) in the restaurant in its clubhouse; and use of the clubhouse for special events.
>
> 16. Because its business activities are variegated and multiple and are dependent on the entrepreneurial efforts and ongoing hard work of its principals and its other employees, <u>and because it does not simply lease its property to tenants as the owner of true single asset real estate such as an apartment house does</u>, the Debtor's golf course does not fall within the scope of the definition of "single asset real estate" in Code § 101(51B), and the Debtor is therefore not subject to Code § 362(d)(3).

2007 WL 1176010, at *6 (emphasis added).

The court's conclusion was consistent with the line of authority holding that a golf course does not constitute "single asset real estate" because a golf course provides additional goods and services that are not intrinsic to owning real estate. <u>In re MTM Realty Trust</u>, No. 08-13428-JMD, 2009 WL 612147, at * 2 (Bankr. D.N.H. Mar. 9, 2009)("[D]ebtors who operate golf courses often do not fit within § 101(51B) because most golf courses have other amenities and services like pro shops, concessions, and golf-cart rentals that are not functions intrinsic to owning real estate."); <u>see</u> <u>Club Golf Partners</u>, 2007 WL 1176010, at *3 (collecting cases). In contrast, each debtor owns a building that leases apartments to tenants, and earns all or substantially all of its income from the payment of rent. The contracting, managing and leasing services that the debtors identified do not generate income except through the payment of increased rent,

9

and as noted, are incidental to the operation of the Properties.

For all of the foregoing reasons, the debtors' Reargument Motion is denied.

So ordered.

Dated: New York, New York
July 23, 2009

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Judge