UNITED STATES BANKRUPTCY COURT　　　　　**Hearing Date: October 1, 2009**
SOUTHERN DISTRICT OF NEW YORK　　　　　**Hearing Time: 10:00 a.m.**
------------------------------------------------------x
　　　　　　　　　　　　　　　　　　　　　:
In re　　　　　　　　　　　　　　　　　　:　　　　Chapter 11
　　　　　　　　　　　　　　　　　　　　　:
VARGAS REALTY ENTERPRISES, INC.　:　　　　Case No. 09-10402 (SMB)
　*et al.,*　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　　　(Jointly Administered)
　　　　　　　　　　　　　Debtors.　　:
　　　　　　　　　　　　　　　　　　　　　:
------------------------------------------------------x

**OBJECTION OF THE UNITED STATES TRUSTEE REGARDING (I) SECOND
AMENDED DISCLOSURE STATEMENT DATED SEPTEMBER 14, 2009
FILED BY CFA W. 111 STREET, L.L.C AND (II) DISCLOSURE
STATEMENT DATED AUGUST 31, 2009 FILED BY DEBTORS**

TO:　　THE HONORABLE STUART M. BERNSTEIN,
　　　　CHIEF UNITED STATES BANKRUPTCY JUDGE:

　　　　Diana G. Adams, the United States Trustee for Region 2 (the "United States

Trustee"), respectfully submits this objection to (i) the Second Amended Disclosure

Statement for Consolidated Plan of Liquidation of Vargas Realty Enterprises, Inc., Noble

Realty Corp., E.R. Properties, Inc., and V.R. Realty Corp. (collectively, the "Debtors") as

proposed by　CFA W. 111 Street, L.L.C. (the "Second Amended CFA Plan," and the

disclosure statement accompanying the CFA Amended Plan, the "Second Amended CFA

Disclosure Statement") and (ii) the Disclosure Statement for Consolidated Plan of

Reorganization of the Debtors as proposed by the Debtors and Debtors-in-Possession (the

"Debtors' Revised Plan," and the disclosure statement accompanying the Debtors' Revised

Plan, the "Debtors' Disclosure Statement," and together with the Second Amended CFA

Disclosure Statement, the "Disclosure Statements").　In support of her objections, the United

States Trustee submits as follows:

# I. SUMMARY STATEMENT

At the time they filed for bankruptcy, the Debtors – which are single asset real estate companies – were attempting to stay a foreclosure action commenced in state court by CFA W111 Street, L.L.C. ("CFA"), their largest secured creditor and mortgagor on four jointly-owned adjacent apartment buildings. During their nine months in bankruptcy, the cases have not run smoothly. The Debtors have commenced adversary proceedings in an attempt to have several loans that the Debtors' president's son – Henry Vargas – entered into allegedly without the Debtors' authority, deemed null and void. At the same time, CFA filed a motion seeking the relief from stay due to the Debtors' failure to make any adequate protection payments; but, pending the outcome of the approval of the Disclosure Statements presently before the Court, the motion has been held in abeyance. And more importantly, the Debtors have been operating and appear to have used CFA's cash collateral without proper authorization.

Against this backdrop of events, CFA and the Debtors have filed competing plans and accompanying Disclosure Statements, whose approval is presently before the Court. The Second Amended CFA Plan described in the Second Amended CFA Disclosure Statement proposes a post-confirmation liquidation of the Debtors and a sale of the properties pursuant to a public action to be conducted by a liquidating trustee, at which CFA proposes to credit bid. While the liquidation structure that CFA proposes is appealing and appears to offer unsecured creditors a greater recovery than they would expect in a state-court foreclosure, the Second Amended CFA Disclosure Statement fails in many respects to make adequate disclosures as required by 11 U.S.C. §1125(a).

Similarly, the Debtors' Disclosure Statement should also not be approved. The Debtors' Disclosure Statement, in fact, describes the Debtors' Revised Plan which itself proposes two alternative plans and fails the feasibility test. Under the first option, the Debtors propose to obtain financing within four months of the effective date of the plan through a financing commitment, a possible contribution by the Debtors' President, and a possible sale of some – but not all – of the Debtors' properties. Recognizing the possibility that the Debtors' reorganization plan – conditioned on exit financing for which there is no commitment and dependant on the outcome of the appeal of the dismissal of the CFA Adversary Proceedings (as defined below) – may fail, the Debtors' alternative in the event they cannot reorganize is to adopt the liquidating plan proposed by CFA.

The Debtors thus expressly acknowledge the possibility that their attempted reorganization may be followed by liquidation; accordingly, the Debtors' Revised Plan clearly fails the feasibility test. When the plan underlying a disclosure statement is clearly unconfirmable, as is the Debtors' Revised Plan, the underlying disclosure statement should not be approved because the solicitation of the creditors' votes would be futile.

For the reasons summarized above and described in more detail herein, the United States Trustee recommends that the Court not approve the Disclosure Statements.

## II. BACKGROUND

### A. General Background

1. On January 29, 2009 (the "Petition Date"), the Debtors filed their respective petitions for voluntary relief under Chapter 11. Since the Petition Date, the Debtors have operated their business and managed their properties as debtors and debtors in possession pursuant to Sections 1107 and 1108 of title 11, United States Code (the "Bankruptcy Code").

2.     The Court has entered orders for joint administration in each of the four Debtor cases (the "Joint Administration Order").  <u>See</u> Docket No. 24. [1]

3.     Each of the jointly administered Debtors is the owner of a parcel of real property improved by a residential apartment building (the "Properties").  On June 9, 2009, the Court ruled that each Debtor's Property qualified as "single asset real estate" as defined in 11 U.S.C. §101(51).  <u>See</u> Docket No. 89.

4.     The United States Trustee solicited unsecured creditors for the formation of an official committee but received insufficient responses to form one.  To date, no trustee or examiner has been appointed in the Debtors' Chapter 11 cases.

5.     On March 12, 2009, the Court entered an order (the "Bar Date Order") establishing April 30, 2009 as the last date for all persons and entities, with the exception of governmental units, to file proofs of claims against the Debtors.  <u>See</u> Docket No. 29.  The Bar Date Order also established July 28, 2009 as the deadline for governmental units to file proofs of claim against the Debtors.  <u>Id.</u>  To date, no objections to any of the unsecured or priority claims have been filed.

6.     CFA is a secured creditor of the Debtors by virtue of a Mortgage, Assignment of Leases and Rent and Security Agreement (the "Mortgage") dated August 28, 2007, in the principal sum of $8,000,000, which Mortgage encumbers the Debtors' Properties.  CFA is also the holder of an Assignment of Leases and rents.  On or about April 22, 2009, CFA filed a proof of claim evidencing their secured status against each of the Debtors in the amount of

---

[1]     Unless otherwise specified, all references herein to "Docket No." are to the docket of the lead case, <u>In re Vargas Realty Enterprises, Inc.</u>, Case No. 09-10402 (SMB).

$9,725,376.27 (the "CFA Claim"). According to CFA, the amount of CFA's secured claim as of August 27, 2009 is approximately $10,850,708.90, exclusive of post-petition attorneys' fees and costs. <u>See</u> Second Amended CFA Disclosure Statement at p.7; <u>see also</u> Debtors' Disclosure Statement at pp. 7-9. Interest continues to accrue on the CFA loan at the *per diem* rate of $5,333.33. <u>Id.</u>

7.     On or about December 7, 2007, the Debtors executed a promissory note in the amount of $225,000 in favor of Pensco Trust Company ("Pensco") secured by a second mortgage on the Properties. <u>See</u> Second Amended CFA Disclosure Statement at p.7; <u>see also</u> Debtors' Disclosure Statement at p. 9. On April 24, 2009, Pensco filed a Proof of Claim asserting a secured claim in the amount of $279,840.68 (the "Pensco Claim").

8.     On May 11, 2009, the Debtors filed a motion seeking the extension of the exclusivity period to file a plan. <u>See</u> Docket No. 44 (the "First Exclusivity Motion"). The First Exclusivity Motion was denied due to the Debtors' failure to appear at the hearing on said motion. <u>See</u> Docket No. 56.

9.     On May 29, 2009 – the deadline for the Debtor to file a plan under section 1121 of the Bankruptcy Code – the Debtors filed a 16-page plan of reorganization, but no disclosure statement. <u>See</u> Docket No. 57.

10.     On June 8, 2009, despite the earlier denial, the Debtors filed yet another motion to extend exclusivity seeking a 60-day extension to file their disclosure statement relating to the Plan. <u>See</u> Docket No. 62 (the "Second Exclusivity Motion"). The Second Exclusivity Motion was also denied due to the Debtors' failure to appear at the hearing.

11.     On August 10, 2009, the Court entered an order directing the Debtors to file a revised plan and disclosure statement by August 31, 2009.  <u>See</u> Docket No. 95.

12.     On August 14, 2009, CFA filed a proposed plan of liquidation (the "First CFA Plan") along with a disclosure statement.  <u>See</u> Docket Nos. 96 and 97.  Thereafter, on August 31, 2009, CFA filed an amended plan along with an amended disclosure statement.  <u>See</u> Docket Nos. 101 and 102.  Subsequently, on September 14, 2009, CFA filed the Second Amended CFA Plan along with the Second Amended CFA Disclosure Statement.  <u>See</u> Docket Nos. 111 and 112.

13.     On August 31, 2009, the Debtors also filed the Revised Debtors' Plan, accompanied by the Debtors' Disclosure Statement.  <u>See</u> Docket Nos. 103 and 104.

**B.      Adversary Proceedings**

14.     On May 25, 2009, the Debtors filed four adversary cases against CFA to, among other things, declare the loan, the Mortgage, and related note invalid and unenforceable as having been entered into without knowledge or authorization of the Debtors (the "CFA Adversary Proceedings").[2]  The CFA Adversary Proceedings also seek an order and judgment that all interests of CFA in any of the Debtors' real or personal property are equitably subordinated to the claims of all other creditors against any of the Debtors.

15.     On August 3, 2009, the Court dismissed the CFA Adversary Proceedings. On August 12, 2009, the Debtors filed a Notice of Appeal to the District Court from the

---

2       The four CFA Adversary Proceedings were commenced by each of the four Debtors against CFA. They are case numbers 09-01251; 09-01252; 09-01253; and 09-01254.

judgment dismissing the CFA Adversary Proceedings. The Debtors' bankruptcy proceedings were not stayed as a result of the appeals.

16.     On May 25, 2009, the Debtors also commenced adversary proceedings against Pensco and CFA (the "Pensco Adversary Proceedings").[3] The Pensco Adversary Proceedings seek to avoid the Pensco Claim and also certain notes originated by Pensco which were subsequently assigned to CFA and comprise part of CFA's note. An Order was signed on August 18, 2009 denying Pensco's and CFA's motions to dismiss the Pensco Adversary Proceedings.

**C.     Second Amended CFA Plan and Second Amended CFA Disclosure Statement**

17.     The Second Amended CFA Plan and the accompanying Second Amended CFA Disclosure Statement contemplate a post-confirmation liquidation of the Debtors through a liquidating trustee (the "Liquidating Trustee")[4] and a sale of the Properties at a public auction to either CFA – as a credit bidder – or the highest and best qualified bidder. More specifically, the Second Amended CFA Plan provides that on the Effective Date (defined at section 1.38 of the Second Amended CFA Plan as the first business day after the entry of the order confirming the plan), the Liquidating Trustee will create a liquidating trust pursuant to a liquidation trust agreement, from which allowed claims would be paid. See Second Amended CFA Disclosure Statement at pp.17-19; Second Amended CFA Plan at §9.6. Upon the Effective Date, the Liquidating Trustee would retain Massey Knakal Realty Services to market the Properties. See Second Amended

---

3       The four Pensco Adversary Proceedings were commenced by each of the four Debtors against Pensco. They are case numbers 09-01247; 09-01248; 09-01249; and 09-01250.

4       CFA proposes the appointment of Fred Ringel, Esq., an attorney with the firm of Robinson Brog

CFA Disclosure Statement at p.18. Thereafter, the Liquidating Trustee would be authorized to sell substantially all of the assets of the Debtors at a public auction sale to be held no later than 60 days after the confirmation of the Second Amended CFA Plan (the "Public Auction Sale"). Id. at pp. 17-18; see also Second Amended CFA Plan at §9.2.

18.     In connection with the Public Auction Sale, CFA would credit bid as stalking horse bidder the sum of $10,000,000 – less than the amount of the claim it presently holds against the Debtors (the "CFA Credit Bid") – to acquire the Properties free and clear of all Claims, liens, encumbrances and interests. See Second Amended CFA Disclosure Statement at p.18. The CFA Credit Bid would be subject to higher and better offers, with a minimum overbid of $10,450,000 (the amount equal to the CFA Credit Bid plus the applicable 4.5% commission due to the broker who CFA seeks to retain by way of this Motion). Id.

19.     If CFA is the successful purchaser at the Public Auction Sale, the Second Amended CFA Plan contemplates that CFA will receive title to the Properties free and clear of all liens, claims, and encumbrances in full satisfaction of the CFA Claim. Id. If CFA is not the purchaser at the Public Auction Sale, CFA will receive proceeds from the sale equal to the CFA Credit Bit plus 75% of all proceeds in excess of the minimum overbid (after payment of the applicable broker's commission), up to a maximum payment to CFA in the amount of $10,375,000, and in return CFA will waive any deficiency claim against the Debtors' estates. Id. The Second Amended CFA Plan proposes that all sums in excess of CFA's maximum recovery of $10,375,000, in addition

---

Leinwand Greene Genovese & Gluck to serve as Liquidating Trustee.

to 25% of proceeds not payable to CFA in excess of the minimum overbid, and CFA's cash collateral in the DIP account, shall be paid over to the Liquidating Trustee for distribution to other allowed creditors.  Id.

        **D.**      **Debtors' Revised Plan and Debtors' Disclosure Statement**

        20.      The Debtors' Revised Plan and accompanying Debtors' Disclosure Statement contemplate two scenarios and, in essence, two plans depending on the outcome of the appeal of the CFA Adversary Proceedings.  See Debtors' Disclosure Statement at p. 18 ("Winning the outstanding appeals from dismissal of the four adversary cases against CFA is at the heart of the Debtors' Second Plan . . .").  Under the first scenario, after a final determination of the amount owed to CFA, the Debtors propose to obtain financing within four months of the Effective Date (also defined as the first day after the entry of the Confirmation Order) of the Debtors' Revised Plan through a combination of (i) financing secured by the Properties;[5] (ii) a possible additional capital contribution by Victor Vargas in an amount of $200,000, (iii) cash in hand, and (iv) a possible sale of one or two of the Debtors' Properties.  Id.  If, by 120 days after determination of the CFA Claim, the Debtors are unable to obtain financing to pay 100% to all allowed claims, including the allowed claim of CFA, then the Debtors' Revised Plan calls for liquidation of the Debtors pursuant to the First CFA Plan.[6]

---

[5]      The Debtors claim that "[t]he present condition of the Debtors is that they are profitable, and have the financial capacity to support a financing in the amount of $7,500,000 or less, at an interest rate of approximately 6.125%."  Debtors' Disclosure Statement at p. 9.

[6]      The First CFA Plan is similar to the Second Amended CFA Plan, with the exception that it contemplated that the Court appoint a liquidating trustee and that the sale of the Properties be conducted by CFA at a public auction to be conducted immediately following confirmation of the plan.

21.     The Debtors expressly admit that the proposed reorganization plan would evolve into the liquidation plan proposed by CFA "[i]f the Debtor's proposed Revised Plan of Reorganization should not work out for any reason, such as (i) failure to obtain reversal of the four adversary case dismissals; (ii) inability in spite of a reversal to reduce the CFA claim to an Allowed amount (perhaps an amount less than $7,500,000) which would enable the Debtors to secure financing to pay all Allowed Claims to the extent of 100%; or (iii) inability to secure the financing needed to pay all Allowed Claims to the extent of 100%." See Docket No. 105 at ¶39.

### III.     GENERAL LEGAL STANDARDS

22.     Under section 1125 of the Bankruptcy Code, a disclosure statement must contain "adequate information" before the debtor may solicit acceptance of the plan of reorganization.  11 U.S.C. § 1125(b).

"Adequate information" is defined as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. §1125(a)(1).

23.     The court may require disclosure appropriate to the circumstances of each case. In re Ionosphere Clubs, Inc., 179 B.R. 24, 29 (S.D.N.Y. 1995).  See also In re Metrocraft Pub Servs., Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (citing nineteen non-exclusive factors that courts may use to evaluate the adequacy of a disclosure

statement) and In re Ferretti, 128 B.R. 16, 18-19 (Bankr. D.N.H. 1991)(citing eighteen of the Metrocraft factors). The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. In re Duratech Industries, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), aff'd, 241 B.R. 283 (E.D.N.Y. 1999). In this case, the Court should not approve the Disclosure Statements because, as set forth below, they do not contain disclosures adequate for a creditor to make an informed decision regarding whether to vote for or against the Second Amended CFA Plan and/or the Debtors' Revised Plan under the circumstances of these cases.

24. A bankruptcy court may also disapprove a disclosure statement that contains adequate information when the proposed plan is facially unconfirmable. See In re Miller, 2008 WL 1912256, *3 (Banks. W.D. La. Jan. 22, 2008). "If the plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied, as solicitation of the vote would be futile." In re Quigley Co., 377 B.R. 110, 115-16 (Bankr. S.D. N.Y. 2007); In re American Capital Equip., Inc., 405 B.R. 415, 425 (Bankr. W.D. Pa. 2009) (holding that proposed Chapter 11 plan, which incorporated settlement between debtor and asbestos liability claimants that provided for impermissible assignment under Pennsylvania law, could not be confirmed, and accompanying disclosure statement, which described that facially confirmable plan, had to be rejected); In re Miller, 2008 WL 1912256, *3 ("When appropriate, '[a]t the hearing on the approval of a disclosure statement, the court may consider issues pertaining to the plan, and may rule upon such issues, when the plan defects make it unconfirmable.'"); In re Eastern Main Elec. Cooperative, Inc., 125 B.R. 329 (Bankr. D. Me. 1991). In this

case, the Debtors' Revised Plan is unconfirmable for the reasons set forth below; accordingly, the Debtors' Disclosure Statement should not be approved.

### IV.     OBJECTIONS TO DISCLOSURE STATEMENTS

#### A. Objections to Second Amended CFA Disclosure Statement

*1.     The Second Amended CFA Disclosure Statement Does Not Give Adequate Information Regarding the Compensation of the Liquidating Trustee*

25.     As set forth above, the Second Amended CFA Plan contemplates the appointment of the Liquidating Trustee to liquidate the Debtors' assets.  However, the Second Amended CFA Disclosure Statement is silent on the compensation to be provided to the Liquidating Trustee.  The only mention of the compensation to be provided to the Liquidating Trustee is in the Liquidation Trust Agreement attached to the Second Amended CFA Plan as Exhibit A.   Accordingly, the Second Amended CFA Disclosure Statement should be modifying to include a section describing the compensation to be provided to the Liquidating Trustee.

*2.     The Liquidation Analysis Does Not Contain Adequate Information*

26.     The liquidation analysis referred to in the Second Amended CFA Disclosure Statement and attached as Exhibit A to the Second Amended CFA Plan fails to take into consideration various important variables which may affect the outcome. First, it fails to take into account the compensation to be paid to the Liquidating Trustee.

27.     Second, the Second Amended CFA Disclosure Statement does not contain an adequate discussion of what would happen if the Pensco Adversary Proceedings were ultimately resolved in favor of Pensco.  The Second Amended CFA Disclosure Statement presently contains unclear and – to a certain extent – conflicting disclosures on this issue.

At page 4, CFA states that "should the liquidation of the Debtors' assets pursuant to the CFA Plan generate funds in excess of all Claims having priority over CFA as well as the amounts proposed to be paid to CFA pursuant to the CFA Plan, a portion of Pensco's Claim (which is currently being disputed by Debtors) may be secured."  <u>See</u> Second Amended CFA Disclosure Statement at p. 4.  This statement, however, is inconsistent with the statement on page 25 that "[i]n the event the disputed Pensco Loan is deemed an Allowed Claim, Pensco purported secured interest will likely be treated as unsecured since CFA is undersecured in the same collateral and holds priority over Pensco."  <u>See</u> Amended CFA Disclosure Statement at p. 25.  Accordingly, the Second Amended CFA Disclosure Statement should be amended to better describe the possibility of the Pensco Claim becoming an allowed claim, and the liquidation analysis should be amended to consider the possibility that the bidding price is higher than the CFA Claim and that the Pensco Adversary Proceedings are resolved in Pensco's favor.

     3.   *The Second Amended CFA Disclosure Statement Contains Language*
         *Regarding United States Trustee Quarterly Fees and Post-Confirmation*
         <u>*Reports That Is Unclear*</u>

     28.     The Second Amended CFA Disclosure Statement contains conflicting provisions regarding the payment of United States Quarterly Fees.  Page 20 of the Second Amended CFA Disclosure Statement contemplates that such fees be payable by the Liquidating Trustee.[7]  In a later section entitled "Post-Confirmation Operating Reports and United States Trustee's Fees," however, the Second Amended CFA Disclosure

---

7       More specifically, the Second Amended CFA Disclosure Statement provides at page 20 that "[a]ll fees and charges assessed against the Debtors under section 1930 of title 28 of the United States Code, including, without limitation, fees payable to the Office of the United States Trustee shall be paid by the Liquidation Trustee in Cash in full as required and in such amounts as provided by statute."  Second Amended CFA Disclosure Statement at p. 20.

Statement contemplates that the Debtors are responsible for the payment of such fees until confirmation, and that the Liquidating Trustee "shall be responsible for the payment of properly documented Post Effective Date Fees[8] from the Liquidation Trust as provided for in the Amended Plan."[9] <u>See</u> Second Amended CFA Disclosure Statement at p. 37. The language in the Second Amended CFA Disclosure Statement and Second Amended CFA Plan needs to be modified to clarify that the Debtor would be responsible to pay UST fees until the confirmation of the plan, and that the Liquidating Trustee would be responsible to make post-confirmation payments on such fees until the entry of a final decree in these cases.

29.     Moreover, the Second Amended CFA Disclosure Statement proposes the substantive consolidation of the Debtors' estates. <u>See id.</u> at pp. 15-16. It is not clear, however, (a) whether CFA proposes to substantively consolidate the Debtors' estates for plan or voting purposes only and (b) whether the Liquidating Trustee will continue to pay the quarterly UST fees for each of the four cases or seek to consolidate the payments. Accordingly, the Second Amended CFA Disclosure Statement should provide more information on this matter. <u>See</u> <u>In re Genesis Health Ventures, Inc.</u>, 402 F.3d 416 (3d Cir. 2005) (where debtors are "consolidated" for plan purposes only, United States Trustee quarterly fees are assessed for each debtor in each case); <u>see</u> <u>also</u> <u>In re Spiegel, Inc.</u>, 2005 WL 1278094, at *13 (Bankr. S.D.N.Y. May 25, 2005) (substantive

---

8       This term is not defined in either the Second Amended CFA Plan or the Second Amended CFA Disclosure Statement.

9       Section 4.5 of the Second Amended CFA Plan provides that "[a]ll fees and charges assessed against the Debtors sunder section 1930 of title 28 of the United States Code shall be paid by the Liquidation Trust Assets, in Cash in full as required by statute and until the closing of this Case, the

14

consolidation provision in plan did not affect the obligation of affiliated debtors to individually pay quarterly fees through closing of the case).

30.     Lastly, the Second Amended CFA Disclosure Statement provides that "[t]he Debtors shall be responsible for the preparation and filing of operating reports until entry of a final decree in this case."  <u>See</u> Second Amended CFA Disclosure Statement at p. 37.  Because the Liquidating Trustee would assume such duties post-confirmation, the Second Amended CFA Disclosure Statement should be amended to provide that the Debtors are responsible to file monthly operating reports until confirmation, and that the Liquidating Trustee would assume the responsibility to file such post-confirmation reports until a final decree is entered.

     *4.*     *The Second Amended CFA Disclosure Statement Should Provide That the Liquidating Trustee Be Bonded*

31.     The United States Trustee takes the position that any party who shall hold any cash reserve or fund on behalf of the creditors of a debtor's estate should obtain a bond for the full amount of any funds to be held by such party for the distribution to creditors, and to agree to notify the Court and the United States Trustee before terminating any such bond.

32.     Here, the only mention of a bond is in section 10.1 of the Second Amended CFA Plan, which provides that "[t]he Liquidating Trustee shall not cancel its bond without notice to the Office of the U.S. Trustee."  To the contrary, the Liquidation Trust Agreement specifically provides that "[n]otwithstanding any state law to the contrary, the Trustee (including any successor) shall be exempt from giving any bond or

---

Liquidation Trustee shall continue to be responsible for the payment of any such fees and charges."

other security in any jurisdiction".  <u>See</u> Liquidation Trust Agreement (attached as Exhibit B to Second Amended CFA Plan) at §10.3.

33.     The Second Amended CFA Disclosure Statement should be modified to provide that the Liquidating Trustee must obtain a bond in the amount of the funds to be held for distribution to the creditors.

> 5.     *The Disclosure Statement Does Not Give Adequate Information Regarding the Injunctions and Limitation of Liability Clauses*

34.     The United States Trustee objects to the Second Amended CFA Disclosure Statement because it does not contain an adequate discussion regarding the releases and the injunctions to be afforded the Debtors and other non-debtor third parties. The Second Amended CFA Disclosure Statement provides for injunction and limitation of liability provisions that are inconsistent with the provision in sections 11.1 and 11.2 of the Second Amended CFA Plan.  <u>See</u> Second Amended CFA Disclosure Statement at pp. 44-45.  The Second Amended CFA Disclosure Statement should make clear that the Debtors (and their officers and directors) are not entitled to a discharge because (a) the Plan is a liquidating plan, (b) the Debtors will not be engaging in business after the consummation of the Plan, and (c) the Debtors would not be entitled to a discharge under 11 U.S.C. §727(a).  <u>See</u> 11 U.S.C. §1141(d)(3);  <u>see also</u> <u>In re New Towne Dev., LLC</u>, 2009 WL 2495770, *3 (Bankr. M.D. La. Aug. 14, 2009).

35.     The injunction and limitation of liability sections in the Second Amended CFA Disclosure Statement also provide for various injunctions and releases of non-debtor parties, such as the successful purchaser, Committee,[10] and various officers and

---

10      As the Court is aware, however, no committee of unsecured creditors was appointed in these

directors. The United States Trustee objects to the Second Amended CFA Disclosure Statement because CFA has not provided a legal basis for the releases of the several non-debtor third parties and further objects to the Second Amended CFA Plan to the extent it seeks to release or exculpate non-debtor parties in any manner inconsistent with <u>Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)</u>, 416 F.3d 136, 141 (2d Cir. 2005).

36.     The United States Trustee further objects to the proposed injunctions and releases to the extent such provisions are overbroad, exceeding the scope of Section 1125(e) of the Bankruptcy Code.[11]  Lastly, these provisions contemplate releasing the ultimate purchaser of the Properties – whether it is CFA or the higher and best bidder. Such releases, however, should only be granted pursuant to section 363(f) and should not be granted until a sale order is entered.

37.     To the extent <u>any</u> proposed injunctions, exculpations and releases are permitted by this Court, the Second Amended CFA Disclosure Statement and Second Amended CFA Plan should include the appropriate language carving out Government

---

Chapter 11 cases.

11      Section 1125(e) of the Bankruptcy Code states that:

A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

11 U.S.C. §1125(e).

claims from the proposed releases. CFA needs to add the following language to the

Second Amended CFA Disclosure Statement and Second Amended CFA Plan:

> Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the parties released, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the released parties for any liability whatsoever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the released parties.

> ### 6. *Additional Deficiencies or Inconsistencies in the Second Amended CFA Disclosure Statement*

38.     In addition to the deficiencies and inconsistencies in the Second Amended

CFA Disclosure Statement with other documents set forth above it also includes the

following issues which should be clarified or modified:

- The Second Amended CFA Disclosure Statement makes references to exhibits attached thereto, but there are no exhibits attached to it;
- The Second Amended CFA Disclosure Statement makes references to the first plan the Debtors filed in May of 2009; reference should be made to the Debtors' Revised Plan filed on August 31, 2009;
- The timing of payment of Administrative Expense Claims for Professionals as set forth on page 20 is inconsistent with the treatment of such claims under section 4.2 of the Second Amended CFA Plan;
- The explanation of "Administrative Expense Claim Bar Date" on page 20 is inconsistent with section 1.1 of the Second Amended CFA Plan;
- Page 21 of the Second Amended CFA Disclosure Statement provides that the Liquidating Trustee shall have 45 days from the Effective Date to challenge any Administrative Claim filed, but that language is not found anywhere is the Second Amended CFA Plan;

- The payment terms for "Priority Tax Claims" described on page 21 of the Second Amended CFA Disclosure Statement are inconsistent with section 4.4 of the Second Amended CFA Plan;
- The description of "Class 3 - Unsecured Claims" on pages 23 and 24 need to clarify that such class does not include any deficiency claim by CFA.
- The "Summary of Treatment' for Class 1 on page 24 provides that "[i]f CFA is the Purchaser, title to the Properties shall e transferred to CFA by the Liquidation Trustee no later than 10 days after the Public Auction Sale;" the timing, however, is inconsistent with other provisions in the disclosure statement which contemplate that the Liquidating Trustee will file a sale motion within 10 days of the Public Auction Sale;
- The description of "Class 3" in the chart on page 25 incorrectly provides that the $844,723.85 figure includes Pensco's Claim;
- The description in the section titled "Payment of Administrative Expenses (Including Bankruptcy Fees), Tax Priority Claims, and Post Effective Date Fees" on page 32 of the Second Amended CFA Disclosure Statement is inconsistent with provisions in the rest of the Second Amended CFA Disclosure Statement and the provisions in the Second Amended CFA Plan;
- The description in the section titled "Manner of Distribution" on page 32 is inconsistent with section 10.3 of the Second Amended CFA Plan;
- The treatment for "Unclaimed Distributions" described on page 33 is inconsistent with the treatment described in section 10.14 of the Second Amended CFA Plan; and
- To the extent the Debtors file monthly operating reports for the month of August, the Second Amended CFA Disclosure Statement will need to be amended to reflect the new figures disclosed in the latest report.

## B.        Objections to Debtors' Disclosure Statement

### 1.        *The Debtors' Disclosure Statement Cannot Be Approved Because the Underlying Debtors' Revised Plan Is Not Feasible*

39.        As set forth above, when a plan underlying a disclosure statement is facially unconfirmable, the disclosure statement should not be approved as the solicitation of the plan would be futile.  In this case, the Debtors' Revised Plan is unconfirmable as it fails, among other things, to meet the feasibility test under section 1129(a) (11) of the Bankruptcy Code.

40.    Under section 1129(a)(11), a court can only confirm a Chapter 11 plan of reorganization after a finding of feasibility, which means that the plan's confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The feasibility standard requires "'reasonable assurance of success. Success need not be guaranteed." See, e.g. In re Journal Register Co., 407 B.R. 520, 539 (Bankr. S.D. N.Y. 2009) (quotations omitted) (also noting that "'[T]he test is whether the things which are to be done after confirmation can be done as a practical matter under the facts, [t]he mere potential for failure of the plan is insufficient to disprove feasibility").

41.    In this case, the Debtors themselves devised a plan that contemplates the likely possibility of liquidation. As a matter of fact, the Debtors in essence propose two plans: First, the Debtors' reorganization plan, which claims to allow payment of 100% to all allowed claimants, is contingent on various conditions, including the Debtors' prevailing on the appeal of the CFA Adversary Proceedings and obtaining financing in the amount of $7 million. Contemplating the possibility that reorganization may not work and not having a commitment letter in hand for the proposed exit financing, the Debtors adopt the First CFA Plan as the fall-back liquidation plan. Such two-tiered plan, which contemplates the likelihood of liquidation and indeed adopts the contingency of such possibility, is in itself an express admission that the proposed plan of reorganization is not feasible, and would thus not be confirmable. Accordingly, the Debtors' Disclosure Statement should not be approved.

2. *The Debtors' Disclosure Statement Lacks Adequate Information With Respect to a Liquidation Analysis and the Payments to Creditors Under the Proposed Reorganization Plan*

42. In order to satisfy the "best interest" test which provides that allowed creditors must receive a present value at least equal to what they would receive if the case were converted to a Chapter 7, the Debtors' Disclosure Statement provides that "[t]he plan pays holders of unsecured claims 100% of their Allowed Claims from moneys borrowed by the Debtors to be secured by the Properties, and with a $200,000 New Value Contribution by Victor Vargas, sole shareholder of each of the four debtors." See Debtors' Disclosure Statement at p. 42. The Debtors' Disclosure Statement does not provide, however, a liquidation analysis which supports this proposition. Moreover, what is not clear is whether the Debtors' proposed payment of 100% of allowed claims is based on the assumption that over $800,000 of unsecured claims would be reduced to $44,400 as the Debtors propose.[12] See Debtors' Disclosure Statement at p. 4 ("The Debtors have a total of approximately $44,400 in unsecured claims against them which are undisputed.").

43. There is also inconsistent language throughout the Debtors' Disclosure Statement with respect to the Pensco Claim. The Debtors, in fact, acknowledge that the Pensco Claim is subject to the Pensco Adversary Proceedings; thus, whether such claim is secured, unsecured, or a claim at all depends on the outcome of that litigation. See Debtors' Disclosure Statement at p. 9. Notwithstanding that, the Debtors' reorganization plan appears to consider the Pensco's claim as fully secured if CFA's allowed claim is

---

13      To date, the Debtors have not filed any objections to unsecured or priority claims; accordingly, until they are objected to, they are deemed allowed.

less than $10,000,000, which is inconsistent with the other statements and need to be clarified. See Debtors' Disclosure Statement at p. 28.

    3.    *Additional Deficiencies or Inconsistencies in the Debtors' Disclosure Statement*

    44.    In addition to the deficiencies and inconsistencies with other documents set forth above, Debtors' Disclosure Statement also includes the following issues which, to the extent the Debtors' Disclosure Statement is approved, should be clarified or modified:[13]

- The section titled "Schedules D, E & F" on page 18 is copied from the first CFA Disclosure Statement and incorrectly lists the scheduled amounts for all four Debtors;
- Cass 2 - Real Property Taxes are improperly classified as the Debtors admit there are no claims in that class;
- The Revised Debtors' Plan and the Debtors' Disclosure Statement classifies Class 5 Interests as an impaired class; given that the Debtors proposes to allow them to retain the interest in the Debtors under the reorganization plan, they should not be allowed to vote;
- The chart on page 28 of the Debtors' Disclosure Statement provides that Class 1 Priority Claims are to receive payment within 30 days of the Effective Date, which is inconsistent with other provisions in the Debtors' Disclosure Statement and the treatment provided such class under the Revised Debtors' Plan;
- The fall-back liquidating option that the Debtors propose relies on the First CFA Plan, which has been superseded by the Second Amended CFA Plan.

    4.    *The Debtors' Disclosure Statement Does Not Give Adequate Information Regarding the Injunctions and Limitation of Liability Clauses*

    45.    The Debtors' Revised Plan and Debtors' Disclosure Statement propose identical provisions to the Second Amended CFA Plan; accordingly, the United States Trustee hereby adopts the objections asserted above with respect to the injunction and

---

13    Given that it is the United States Trustee's position that the plan is unconfirmable, this objection does not focus on all the inconsistencies and inadequacies presented in the Debtors' Disclosure Statement.

limitation of liability provisions in the Debtors' Revised Plan and Debtors' Disclosure Statement.

### C. Objections to Confirmation

46.     If applicable, the foregoing objections constitute objections by the United States Trustee to the confirmation of the respective plans by the United States Trustee. Moreover, the United States Trustee hereby reserves all of her rights to object on any other ground to the confirmation of the Second Amended CFA Plan or the Debtor's Revised Plan or any other amended plans filed by CFA or the Debtors.

## VI.     CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court sustain the objections raised herein to the Disclosure Statements and grant such other relief that this Court deems appropriate.

Dated:  New York, New York
        September 25, 2009

Respectfully submitted,
DIANA G. ADAMS
UNITED STATES TRUSTEE

By:     /s/ Elisabetta G. Gasparini
        Elisabetta G. Gasparini
        Trial Attorney
        33 Whitehall Street, 21st Floor
        New York, NY 10004
        Tel. No. (212) 510-0500
        Fax No. (212) 268-2255

23