# LIQUIDATION TRUST AGREEMENT

This Liquidation Trust Agreement (the "Agreement" or the "Trust") dated as of _____, 2009, by and between Vargas Realty Enterprises, Inc., Noble Realty Corp., E.R. Properties, Inc., and V&R Realty Corp. (collectively, the "Debtor" or "Settlor"), and Fred B. Ringel, Esq., as trustee (the "Trustee"), for the benefit of the holders of Allowed Claims (the "Beneficiaries") under the terms of the First Amended Plan of Liquidation of Vargas Realty Enterprises, Inc., Noble Realty Corp., E.R. Properties, Inc. and V&R Realty Corp, as proposed by CFA W. 111 Street, L.L.C. (the "Plan"), filed in Chapter 11 Case No. 09-10402 (SMB) Jointly Administered with cases 09-10403; 09-10406; 09-10407) pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and confirmed by Order of the Bankruptcy Court dated _____.

## WITNESSETH

WHEREAS, the Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the Trust is created on behalf, and for the sole benefit, of the Beneficiaries made pursuant to the Plan;

WHEREAS, the Trust is established for the purpose of collecting, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Plan;

WHEREAS, pursuant to the Plan, the Settlor, the Trustee, and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust Assets by the Settlor to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust;

WHEREAS, the Trust is intended to be treated as a grantor trust for federal income tax purposes;

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Settlor and the Trustee agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1 Definitions.

1.1.1 "Agreement" shall mean this Liquidation Trust Agreement.

1.1.2 "Beneficiaries" shall collectively mean the holders of Allowed Claims under the Plan, or any successors to such holders' Allowed Claims pursuant to Article 10.1 herein.

1.1.3 "Effective Date" shall have the same meaning as set forth in the Plan.

1.1.4 "Settlor" shall mean the Debtor,

1.1.5 "Trust" shall mean the trust established pursuant to the terms of this Agreement and the Plan.

1.1.6 "Trust Assets" shall mean the assets assigned to the Trust pursuant to the Plan.

1.1.7 "Trust Property" shall mean the property held in trust hereunder and the Trust Assets, including the proceeds and/or income related thereto, held from time to time pursuant to this Agreement by the Trustee of the Trust for the benefit of the Beneficiaries.

1.1.8 "Trustee" shall mean (x) initially, the persons/corporations named herein, and (y) any successors or replacements duly appointed under the terms of this Agreement.

1.2 Use of Plan Definitions. All terms which are used in this Agreement and not defined herein shall have the same meaning as set forth in the Plan and the Disclosure Statement submitted therewith. In the case of any inconsistency between the terms of this Agreement and the terms of the Plan or Disclosure Statement, the terms of the Plan and Disclosure Statement shall govern and control.

1.3 Interpretation. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

## ARTICLE II
## DECLARATION OF TRUST

2.1 Purpose of Trust. The Settlor and the Trustee, pursuant to the Plan and in accordance with title 11 of the United States Code (the "Bankruptcy Code"), hereby create the Trust for the purpose of collecting, distributing and liquidating the Trust Property for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Plan. The activities of the Trust shall be limited to those activities set forth in Article 3 hereof and as otherwise contemplated by the Plan.

2.2 Transfer of Trust Assets.

A. The Settlor hereby grants, releases, assigns, transfers and delivers, on behalf of the Beneficiaries, the Trust Property to the Trustee for the benefit of the Beneficiaries to be applied

as specified in this Agreement and the Plan, as of the date of the distribution of the Trust Property to the Trust, The Settlor shall from time to time as and when reasonably requested by the Trustee execute and deliver or cause to be executed and delivered all
such documents (in recordable form where necessary or appropriate) and the Settlor shall take or cause to be taken such further action as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in or confirm to the Trustee title to and possession of the Trust Property.

      B. For all federal, state and local income tax purposes, the Settlor, the Beneficiaries, and the Trustee shall treat the transfer of the Trust Property to the Trust as a transfer of the Trust Property by the Settlor to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their beneficial interests in the Trust. Thus, the Beneficiaries shall be treated as the grantors and owners of the Trust.

## ARTICLE I11
## ADMINISTRATION OF THE TRUST

      3.1 <u>Rights, Powers and Privileges</u>. The Trustee shall have only the rights, powers and privileges expressly provided in the Plan and/or this Agreement. The Trustee shall have the power to take the actions granted in the subsections below and any powers reasonably incidental thereto, which the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

    A.    Hold legal title to any and all rights of the Settlor and the Beneficiaries in or arising from the Trust Property, including but not limited to, stock and the right to vote any Trust Assets consisting of common stock as provided for in Article 4 hereof;

    B.    In reliance upon the schedules and claims register maintained in the Debtor's Chapter 11 case, maintain on the Trustee's books and records, a register evidencing the beneficial interest herein held by each Beneficiary;

    C.    Protect and enforce the rights to the Trust Property (including any Causes of Action) vested in the Trustee by this Agreement and by the Plan by any method deemed appropriate including, without limitation, by judicial proceedings or otherwise;

    D.    Make all distributions provided for in, or contemplated by, the Plan and this Agreement;

    E.    Open and maintain bank accounts on behalf of or in the name of the Trust;

    F.    Make all tax withholdings, file tax information returns, make tax elections by and on behalf of the Trust and file returns for the Trust pursuant to Article 7.9

hereof, as necessary;

G. Establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

H. Pay all expenses and make all other payments relating to the Trust Assets;

I. Retain and pay third parties pursuant to Article 3.2 hereof;

J. Carry insurance coverage or obtain a bond in such amounts as the Trustee deems advisable as an expense of the Trust; and

K. In accordance with the Plan, be vested with and perform all rights and duties of the Debtor, including the right to operate the Trust Assets (including the Properties) pending sale and to hire appropriate professionals to assist the Trustee in such management, operation and subsequent sale of any of the Trust Assets;

L. All powers provided under the Plan, including the right to object to creditors' claims and pursue Causes of Action;

M. Invest any moneys held as part of the Trust Assets in accordance with the terms of Article 3.3 hereof.

3.2 <u>Agents and Professionals</u>. The Trustee may, but shall not be required to, consult with and retain attorneys, accountants, appraisers, brokers, agents, management company, or other parties deemed by the Trustee to have qualifications necessary to assist in the proper administration of the Trust and no further Bankruptcy Court Order or additional approval for such retention shall be required. Subject to the procedures set forth herein, the Trustee may pay the reasonable salaries, fees and expenses of such agents and professionals out of the Trust Property in the ordinary course of business.

3.3 <u>Investment and Safekeeping of Trust Property</u>. All moneys and other assets received by the Trustee shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries, but need not be segregated from other Trust Property, unless and to the extent required by law. The Trustee shall be under no liability for interest or producing income on any moneys received by it herein and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trustee. Investments of any moneys held by the Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the Trustee to invest moneys held by the Trustee, or any income earned by the Trust shall be limited to the right and power to invest such moneys, pending periodic distributions in accordance with Article 4 hereof and the Plan.

## ARTICLE IV
## DISTRIBUTIONS FROM THE TRUST

4.1 Distributions. The Trustee shall make distributions of the available Trust Property to the Beneficiaries in accordance with the Plan; provided, however, that the Trustee must retain and reserve in the Trust such amounts as are reasonably necessary to comply with the Plan and to pay any fees or expenses for which the Trustee has obligated the Trust to pay in accordance with the terms hereof.

4.2 Pro Rata Share of Distributions. Each Beneficiary shall receive its pro rata share of any and all distributions in accordance with the Plan, except that the Trustee may withhold from amounts distributable to any Beneficiary, any and all amounts, determined in the Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

4.3 Payments Limited to Trust Property. All payments to be made by the Trustee to or for the benefit of any Beneficiary shall be made only from the Trust Property and only to the extent that the Trustee has sufficient reserves to make such payments in accordance with the Plan and this Agreement. Each Beneficiary shall have recourse only to the Trust Property for distributions under this Agreement.

4.4 Priorities of Distribution. The Trustee must pay the then outstanding operating expenses of the Trust before approving distributions to or for the benefit of Beneficiaries.

## ARTICLE V
## BENEFICIARIES

5.1 Interest Beneficial Only. The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary or the Settlor to any title in or to the Trust Property or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

5.2 Ownership of Beneficial Interests Hereunder. Each Beneficiary shall own a beneficial interest herein equal in proportion to the pro rata share of such Beneficiary's Allowed Claim in accordance with the Plan.

5.3 Evidence of Beneficial Interest. Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4 Notice of Transfer of Beneficial Interest. Any notice of a change of beneficial interest ownership as described in Section 10.1 of this Agreement shall be forwarded to the Trustee as set forth in Section 10.2 of this Agreement. The notice shall be executed by both the transferee and the transferor, and the signatures of the parties shall be acknowledged before a notary public. The notice must clearly describe the interest to be transferred. The Trustee may rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

# ARTICLE VI
# THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1 Parties Dealing With the Trustee. In the absence of actual knowledge to the contrary, any person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Property. There is no obligation on any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2 Limitation of Trustee's Liability. Anything herein to the contrary notwithstanding, in exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all the Beneficiaries and the Settlors are safeguarded; but the Trustee shall not incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under this Agreement, except for gross negligence, willful misconduct, fraud or intentional misconduct.

6.3 Indemnification. The Trustee shall be indemnified and receive reimbursement against and from all loss, liability, expense (including counsel fees) or damage which the Trustee may incur or sustain in the exercise and performance of any of the Trustee's powers and duties under this Agreement, to the full extent permitted by applicable law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result from the Trustee's willful misconduct, fraud, intentional misconduct or gross negligence. The amounts necessary for such indemnification and reimbursement shall be paid by the Trustee out of the Trust Assets. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no person shall look to the Trustee personally for the payment of any such expense or liability. This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the Trustee, or the termination of the Trust, and shall inure to the benefit of the Trustee's heirs and assigns.

# ARTICLE VII
# SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

7.1 Initial Trustee. The initial Trustee shall be Fred B. Ringel, Esq.

7.2 Term of Service. The Trustee shall serve until (a) the completion of all the Trustee's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Trustee in accordance with this Agreement, or (c) the Trustee's death, resignation or removal.

7.3 Removal of a Trustee. Any person serving as Trustee may be removed at any time by an order of the Bankruptcy Court. The removal shall be effective on the date specified in the order.

7.4 Resignation of Trustee. The Trustee may resign at any time, provided that the Trustee has arranged for the substitution of a qualified Successor Trustee by giving the Debtor at least thirty (30) days written notice of his intention to resign and substitute a Successor Trustee.

Such notice of the Trustee's intent to resign shall be accomplished by the filing of a notice of resignation and appointment of Successor Trustee with the Bankruptcy Court at least thirty (30) days prior to the date the resignation is to become effective.

7.5 <u>Appointment of Successor Trustee</u>. Upon the resignation, death, incapacity, or removal of a Trustee, the Trustee (or the Debtor, if the Trustee is unable) shall appoint a successor Trustee to fill the vacancy so created. Any successor Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Trustee and all of their heirs and legal and personal representatives, successors or assigns. Unless an objection to the appointment of the Successor Trustee is received and such objection is upheld by the Bankruptcy Court, no other approval or action shall be required for the appointment of the Successor Trustee to become effective upon the Trustee's resignation.

7.6 <u>Powers and duties of Successor Trustee</u>. A successor Trustee shall have all the rights, privileges, powers, and duties of his or her predecessor under this Agreement and the Plan.

7.7 <u>Trust Continuance</u>. The death, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

7.8 <u>Compensation and Costs of Administration</u>. The Trustee shall receive fair and reasonable compensation for providing the services set forth in the Plan and this Agreement which shall be charged against and paid out of the Trust Property. Such compensation shall be paid under the following terms and conditions. The Trustee shall bill his time at $450 per hour, to be paid $4,500 for each three-month quarterly period, beginning with the quarter starting on the first (1st) day of the month after entry of the Order Confirming the Plan (the "Commencement Date"), within 10 days of the beginning of each quarter. This quarterly fee shall compensate the Trustee for up to 10 hours of services per quarter, including travel time. In the event the Trustee works more than 10 hours in any particular quarter, these excess hours shall be carried over and applied against the following quarter's ten hour allotment. In the event less than 10 hours of services are performed in any quarter, the Trustee shall nevertheless receive the $4,500 quarterly fee and there shall be no credit for additional hours allocated to the next successive quarter. Should the Trustee perform more than 40 hours of service in any 12 month period (commencing on the Commencement Date), then the Trustee shall receive additional compensation equal to the number of hours worked in excess of 40 hours multiplied by $450 to be billed and paid as provided herein. All disbursements for fees, costs and other expenses incurred by the Trustee or the Trust (other than the Trustee's compensation) shall be paid monthly pursuant to the Plan and/or as described in this Agreement. The Bankruptcy Court shall retain exclusive jurisdiction over all disputes regarding the Trustee's compensation and any proposed disbursements from the Trust. All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trustee from the Trust Property as provided herein and in the Plan. The Trustee shall file a notice with the Bankruptcy Court regarding claims for his own compensation (including any

additional compensation sought by the Trustee above 40 hours annually). If no objection is received within 10 days from the date of service of the notice, the compensation shall be deemed approved without further notice or hearing.

7.9 Annual Reporting and Filing Requirements. The Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), as necessary.

## ARTICLE VIII
## MAINTENANCE OF RECORDS

8.1 The Trustee shall maintain books and records containing a description of all property from time to time constituting the Trust Property and an accounting of all receipts and disbursements. Said books shall be open to inspection by any Beneficiary at any reasonable time during normal business hours. The Trustee shall furnish to any Beneficiary upon written request an annual statement of receipts and disbursements of the Trust.

## ARTICLE IX
## DURATION OF TRUST

9.1 Duration. The Trust shall become effective upon the transfer of the Trust Property to the Trust by the Debtor in accordance with the Plan. Thereupon, the Trust and its provisions herein shall remain and continue in full force and effect until the Trust is terminated.

9.2 Termination Upon Distribution of All Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the distribution of all remaining Trust Property in accordance with the provisions of the Plan, the Confirmation Order and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

## ARTICLE X
## MISCELLANEOUS

10.1 Limitation on Transferability. It is understood and agreed that the Beneficial interest herein shall be non-assignable during the term of this Agreement except by operation of law. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. Trustee may rely upon such proof without the requirement of any further investigation.

10.2 Notices. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by any of hand delivery or

facsimile transmission (if receipt is confirmed) or overnight courier (FedEx, DHL, etc., with confirmation of delivery), addressed as follows:

If to the Trust:
Fred B. Fingel, Trustee
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
1345 Avenue of the Americas, 31st Floor,
New York, New York 10105
Tel: 212-603-6300
Fax: 212-956-2164

With a copy to:
Robert R. Leinwand, Esq.
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
1345 Avenue of the Americas, 31st Floor,
New York, New York 10105
Tel: 212-603-6300
Fax: 212-956-2164

or to such other address as may from time to time be provided in written notice by the Trustee.

    10.3 No bond. Notwithstanding any state law to the contrary, the Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

    10.4 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

    10.5 Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

    10.6 Particular Words. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

    10.7 Heading. The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

    10.8 No execution. All funds in the Trust shall be deemed in custodia legis until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Property or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payment will be solely governed by the Plan and this Agreement.

    10.9 Intention of Parties to Establish Grantor Trust. This Agreement is intended to

create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

10.10 <u>Amendment</u>. This Agreement may be amended only by order of the Bankruptcy Court.

10.1 1 <u>Severability</u>. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

DEBTORS:                                                    TRUSTEE:

Vargas Realty Enterprises, Inc.


_____                                 _____
By: Carl Person, Esq.                                       Fred B. Ringel, Trustee
*Counsel for Debtor*

Noble Realty Corp.


_____
By: Carl Person, Esq.
*Counsel for Debtor*

E.R. Properties, Inc.


_____
By: Carl Person, Esq.
*Counsel for Debtor*

V&R Realty Corp.


_____
By: Carl Person, Esq.
*Counsel for Debtor*