UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                          :
In re:                                    :      Chapter 11
                                          :
**VARGAS REALTY ENTERPRISES, INC., et al.,** :   Case No. 09-10402 (SMB)
                                          :      Jointly Administered
                              Debtor.     :
                                          :
----------------------------------------------------------------x


**FOURTH AMENDED CONSOLIDATED PLAN OF LIQUIDATION
OF VARGAS REALTY ENTERPRISES, INC., NOBLE REALTY CORP.,
E.R. PROPERTIES, INC. AND V&R REALTY CORP.
AS PROPOSED BY CFA W. 111 STREET, L.L.C.**


**KRISS & FEUERSTEIN LLP**
**Attorneys for Secured Creditor and Proponent,**
**CFA W. 111 Street, L.L.C.**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900

**Of Counsel:  Jerold C. Feuerstein, Esq.**


**Dated:**  New York, New York
         October 1, 2009

CFA W. 111 Street, L.L.C., (the "Proponent" or "CFA") a secured creditor of the Debtors herein, proposes the following Fourth Amended Plan of liquidation on behalf of the jointly administered Debtors herein (the "Plan" or "Fourth Amended Plan") pursuant to section 1121(c)(3)of title 11 of the United States Code.

## ARTICLE 1

### DEFINITIONS

Unless the context otherwise requires, (i) the following terms shall have the following meanings when used in this Fourth Amended Plan; (ii) any capitalized term that is used in this Fourth Amended Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules or the Fourth Amended Disclosure Statement submitted with this Fourth Amended Plan shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Fourth Amended Plan are to the respective section of, article of or exhibit to the Fourth Amended Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in the Fourth Amended Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Fourth Amended Plan in its entirety rather than to only a particular portion

of the Fourth Amended Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Fourth Amended Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1 **"Administrative Bar Date"** means (i) any date set by Order of the Bankruptcy Court subsequent to which a Proof of Administrative Claim is not timely filed, or (ii) if no such date is set, the first Business Day which is thirty (30) days after the Effective Date.

1.2 **"Administrative Claim"** means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Fourth Amended Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such Claim, and (iii) to which the Bankruptcy Court has not disallowed.

1.3 **"Administrative Expense"** means any actual and necessary cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b), 330 or 331 of the Bankruptcy Code.

1.4 **"Allowed Claim"** means a Claim against the Debtors that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of

Claim has been filed, that has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent.

1.5 **"Allowed Interest"** means an Interest in the Debtors that has not been disallowed pursuant to a Final Order and is not a Disputed Interest or an Allowed Preferred Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent.

1.6 **"Available Cash"** means the sum of cash remaining in the Debtors' estate after payment of all claims having priority over Class 3 Unsecured Claims, including but not limited to, Administrative Expenses, Priority Tax Claims, Professional Fees and Reimbursements, Bankruptcy Fees, Cure Amounts, Priority Claims, CFA Secured Claim, and the Broker's Commission.

1.7 **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

1.8 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

1.9 **"Bankruptcy Fees"** mean all fees and charges assessed against the estate under section 1930 of title 28 of the United States Code.

1.10    "**Bankruptcy Rules**" mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in either case, as now in effect or hereinafter amended.

1.11    "**Bar Date**" means with respect to pre-petition claims, April 30, 2009, the date set by Order of the Bankruptcy Court as the last date by which a Proof of Claim or Proof of Interest must be filed to be deemed timely.

1.12    "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.13    "**Case**" means the four jointly administered cases under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court on the Petition Date and styled *In re Vargas Realty Enterprises, Inc.,* Case No. 09-10402, *In re Noble Realty Corp.* 09-10403-, *In re V & R Realty Corp.* 09-10406 and *In re E.R. Properties, Inc.* 09-10407.

1.14    "**Cash**" means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

1.15    "**Causes of Action**" shall include, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgment, Claims and demands whatsoever, whether known or unknown, at law or in equity, in contract in tort, or otherwise.

1.16    "**CFA**" means CFA W. 111 Street, L.L.C.

4

1.17    **"CFA Assignment of Leases and Rents"** means that certain Assignment of Leases and Rents, which was recorded in the Office of the City Register of the City of New York on September 14, 2007 as CRFN No.: 2007000473977.

1.18    **"CFA Cash Collateral"** means any funds subject to CFA's Assignment of Leases and Rents pursuant to 11 U.S.C. 363 of the United States Bankruptcy Code

1.19    **"CFA Credit Bid"** means the sum of $10,000,000.00, which amount is the maximum amount CFA is willing to credit bid to acquire the Properties at a Public Auction Sale.

1.20    **"CFA Note"** means, collectively, each and every agreement, promissory note, including amendment or modification thereof, or allonge thereto, evidencing a Claim held by CFA against the Debtors.

1.21    **"CFA Secured Claim"** means the Secured Claim, against the Debtors, or the Debtors' Properties, on account of the CFA Loan.

1.22    **"CFA Security Document"** means each and every mortgage, assignment of rents, security agreements, spreader agreement and/or any such other documents granting CFA a lien on the Debtors' Property regarding the CFA Secured Claim.

1.23    **"Claim"** means any right to (a) payment from the Debtors, whether or not such right is reduced to judgment, liquidate, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured or unsecured, or (b) an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

1.24    **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests as established pursuant to Article 3 of the Fourth Amended Plan.

1.25    **"Closing"** means the date on which title to the Debtors' Properties are transferred to the Purchaser.

1.26    **"Conditional Payments Schedule"** shall have the meaning set forth in section 7.2(b) of this Fourth Amended Plan.

1.27    **"Confirmation"** means the entry of the Confirmation Order.

1.28    **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

1.29    **"Confirmation Order"** means an Order confirming the Fourth Amended Plan pursuant to section 1129 of the Bankruptcy Code.

1.30    **"Creditor"** means a holder of an Allowed Claim.

1.31    **"Cure Amount"** means any amount required, pursuant to sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any executory contract or unexpired lease for any actual pecuniary loss resulting from a default in respect of an executory contract or unexpired lease.

1.32    **"Debtors"** means Vargas Realty Enterprises, Inc., Noble Realty Corp., E.R. Properties, Inc., and V&R Realty Corp.

1.33    **"Deficiency Claim"** means, unless the holder thereof elects treatment in accordance with section 1111(b)(2) of the Bankruptcy Code and Bankruptcy Rule 3014, that portion

of an Allowed Claim that exceeds the value of all property in which the Estate has an interest that is subject to a Lien securing such Allowed Claim.

1.34  **"Disclosure Statement"** means that certain Fourth Amended Disclosure Statement For Consolidated Plan Of Liquidation Of Vargas Realty Enterprises, Inc., Noble Realty Corp., E.R. Properties, Inc., and V&R Realty Corp. as proposed by CFA W. 111 Street, L.L.C., including all exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

1.35  **"Disputed Claim"** means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed;

(b)  any Claim (including an Administrative Expense), or portion thereof, that has not been disallowed pursuant to a Final Order and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Fourth Amended Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Judicial Order;

(c)  Until the earlier of (i) the filing of a timely objection to a Proof of Claim (in which case Section 1.35(b) above shall govern) or (ii) the last date to file objections to Claims as established by the Fourth Amended Plan or by Judicial Order, a Claim represented by a Proof of Claim shall be deemed to be a Disputed Claim in its entirety if, (i) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (ii) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim has been listed in the Schedules.

1.36  **"Disputed Claim Reserve"** means the segregated account or accounts established by the Liquidation Trustee pursuant to section 10.7 of the Fourth Amended Plan.

1.37  **"Disputed Interest"** means (a) any Interest that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Interest has been filed;

(b)     any Interest, or portion thereof, that has not been disallowed pursuant to a Final Order and with respect to which a timely objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Fourth Amended Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Judicial Order;

(c)     Until the earlier of (i) the filing of an objection to a Proof of Interest (in which case Section 1.35(b) above shall govern) or (ii) the last date to file objections to Interest as established by the Fourth Amended Plan or by Judicial Order, an Interest represented by a Proof of Interest shall be deemed to be a Disputed Interest in its entirety if, (i) the amount specified in the Proof of Interest exceeds the amount of any corresponding Interest listed in the Schedules; (ii) any corresponding Interest listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Interest has been listed in the Schedules.

1.38  **"Effective Date"** means the first Business Day after entry of the Confirmation Order.

1.39  **"Estate"** means the estates of the Debtors, as consolidated, and created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.40   **"Executory Contract"** means an executory contract within the meaning of section 365 of the Bankruptcy Code.

1.41   **"Filing Date"** January 29, 2009, the date upon which a voluntary petition was filed by the Debtors with the Bankruptcy Court.

1.42   **"Final Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, *certiorari* proceeding or other proceeding for review or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review or rehearing shall then be pending.

1.43   **"Interest"** means an equity interest in the Debtors.

1.44   **"Interest Holder"** means the holder of an Allowed Interest in the Debtors.

1.45   **"Judicial Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed.

1.46   **"Legal Holiday"** means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.47   **"Liquidation Trustee"** means (a) Fred Ringel, Esq. c/o  Robinson Brog Robinson Brog Leinwand Greene Genovese & Gluck P.C. 1345 Avenue of the Americas, 31st Floor, New York, New York 10105-0143 Phone: 212-603-6300, or (b) a Court appointed Liquidation

Trustee or (c) any other Entity designated in the Confirmation Order to make distributions in accordance with the terms of the Fourth Amended Plan.

1.48 **"Liquidation Trust"** shall have the meaning set forth in the Disclosure Statement filed with this Fourth Amended Plan.

1.49 **"Liquidation Trust Agreement"** shall have the meaning set forth in the Disclosure Statement filed with this Fourth Amended Plan.

1.50 **"Liquidation Trust Assets"** shall have the meaning set forth in the Disclosure Statement filed with this Fourth Amended Plan.

1.51 **"Net Sale Proceeds"** shall have the meaning set forth in section 7.1.2 of the Fourth Amended Plan.

1.52 **"Order"** means an order of the Bankruptcy Court.

1.53 **"Petition Date"** means January 29, 2009, the date on which this Case was commenced by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code by the Debtors.

1.54 **"Fourth Amended Plan"** means this *Fourth Amended Plan of Liquidation,* as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.55 **"Priority Claim"** means that portion of an Allowed Claim, other than a Priority Tax Claim, an Administrative Claim, or Bankruptcy Fees, entitled to priority under section 507 of the Bankruptcy Code.

1.56     **"Priority Tax Claim"** means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.57     **"Professional"** means all professionals employed by the Debtors or a Committee under section 327 of the Bankruptcy Code pursuant to a Final Order.

1.58     **"Professionals' Fees"** means compensation for services rendered, and reimbursement of expenses incurred, by Professionals, as awarded by Final Order following application, in accordance with sections 330 and 331 of the Bankruptcy Code.

1.59     **"Proof of Claim"** means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.60     **"Proof of Interest"** means a proof of an Interest filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.61     **"Property Sale Tax"** shall have the meaning set forth in section 9.4 of the Fourth Amended Plan.

1.62     **"Properties"** means the real property and improvements thereon located at 136 West 111th Street, New York, New York (Block: 1820 Lot: 51); 140 West 111th Street, New York, New York (Block: 1820 Lot: 53); 148 West 111th Street, New York, New York (Block: 1820 Lot: 57) ; and 144 West 111th Street, New York, New York (Block: 1820 Lot: 54).

1.63     **"Proponent"** means CFA W. 111 Street, L.L.C., a secured creditor of the Debtors.

11

1.64    **"Pro Rata"** means the proportion an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.65    **"Public Auction Sale"** means the sale of the Debtors' Properties to the Purchaser in accordance with the terms and conditions in section 9.2 of the Fourth Amended Plan.

1.66    **"Purchaser"** means CFA or the person or entity that is the successful purchaser of the Properties, as the case may be, which is being sold under this Fourth Amended Plan.

1.67    **"Released Disputed Collateral"** shall have the meaning set forth in section 7.2(b) of the Fourth Amended Plan.

1.68    **"Released Entities"** means, individually and collectively, the Debtors, its Interest Holders, and each of their respective, directors, officers, shareholders, members, partners, agents, employees, representatives, attorneys and other professionals, subsidiaries, and affiliates, and any successor in interest of any of them.

1.69    **"Schedules"** mean the schedules of assets and liabilities and the filed by the Debtors with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.70    **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in

such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.71    "**Secured Tax Claim**" means a Secured Claim for taxes or assessments held by a Governmental Unit.

1.72.    "**Substantial Consummation**" shall have the meaning set forth in 11 U.S.C. § 1101(2).

1.73    "**Transfer Documents**" shall have the meaning set forth in section 3.3(b) of the Fourth Amended Plan.

1.74    **Transfer Taxes"** means any and all stamp taxes or similar taxes, if and as applicable.

1.75    "**Unsecured Claim**" means an Allowed Claim, including any Deficiency Claim that is not an Administrative Claim, a Bankruptcy Fee, a Priority Tax Claim, or a Secured Claim.

1.76    "**Unexpired Lease**" means an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

1.77    "**Unresolved Causes of Action**" shall mean the Causes of Action which have not been finally settled (with requisite Bankruptcy Court approval), dismissed, released, discharged or resolved by entry of a Final Order or other procedurally appropriate means, including under the Fourth Amended Plan.

## ARTICLE 2

## SUBSTANTIVE CONSOLIDATION

2.1    The Proponent's Fourth Amended Plan proposed herein is conditioned on the substantive consolidation of each of the Debtors' estates for all purposes including but not limited to the payment of U.S. Trustee's Fees.  As is more fully set forth in the section of the Fourth Amended Disclosure Statement entitled "Application for Substantive Consolidation", it is clear that the balancing of the equities and legal precedent strongly favors the substantive consolidation of each of the Debtors' estates.

## ARTICLE 3

## THE LIQUIDATION TRUST

3.1 **Purpose**. The sole purpose of the Liquidation Trust is liquidating and distributing the Liquidation Trust Assets in accordance with this Fourth Amended Plan.

3.2 **Liquidation Trust Agreement.** The Liquidation Trust Agreement shall be entered into by the Debtor and the Liquidation Trustee within three (3) days after the Effective Date herein. A copy of the Liquidation Trust Agreement in substantially final form is annexed hereto as **Exhibit "A"**. The Liquidation Trust Agreement provides for, among other matters, creation of the Liquidation Trust, identification of the Liquidation Trustee as the initial trustee of the Liquidation Trust, description of the method of compensating the Liquidation Trustee, and specification of the authorities and powers of the Liquidation Trustee.  The Liquidating Trust Agreement shall be amended to reflect the requirement that the Liquidating Trustee post a bond in an amount to be determined by the Court.

3.3 **Funding.** **(a)**      On or before the Effective Date, the Debtors shall transfer to the Liquidation Trust the Liquidation Trust Assets, which sums shall be used to fund the operations of the Liquidation Trust, pursue any unresolved Causes of Action and/or objections to Claims, and make distributions in accordance with the Fourth Amended Plan to holders of Allowed Claims. The Liquidation Trustee shall invest the funds in the Liquidation Trust in one or more accounts; provided, however, that all investments shall be made in accordance with Bankruptcy Code § 345.

**(b)**      On or before the Effective Date herein, Debtor shall in any event be obligated to execute and deliver to the Liquidation Trustee all such documents, authorizations, consents, and directions to third-parties, necessary to effectuate the Fourth Amended Plan, including, without limitation, the Liquidation Trust Agreement, any and all deeds, bills of sale, assignments, consents to transfer contents of bank accounts, and such other documents necessary to effectuate the intent of this Fourth Amended Plan (collectively, the "Transfer Documents"). Upon confirmation of the Fourth Amended Plan, Debtor will be deemed to have granted to the Liquidation Trustee a power of attorney (coupled with an interest) for such Liquidation Trustee to execute any such Transfer Documents on behalf of Debtor if Debtor has not executed and delivered such Transfer Documents on or before the Effective Date hereof.

3.4 **The Liquidation Trustee.**

**(a) Appointment.** The Bankruptcy Court shall enter an order (which may be the Confirmation Order) approving the Liquidation Trust Agreement and appointing the Liquidation Trustee who shall serve from and after the Effective Date until completion of

responsibilities or resignation or discharge and appointment of a successor liquidation trustee.

**(b) Liquidation Trustee Duties.** The Liquidation Trustee's duties shall include: (i) deposit of funds into the Liquidation Trust(s); (ii) management of the Liquidation Trust(s); (iii) distribution of the funds contained in the Liquidation Trust(s) in accordance with this Fourth Amended Plan; and (iv) the prosecution of any and all Unresolved Causes of Action and objections to Claims; (v) filing of a motion for final decree; (vi) such other rights and powers as more fully set forth in the Liquidation Trust Agreement, a copy of which is annexed to the Fourth Amended Disclosure Statement as Exhibit A thereto.

**(1) Assignee of Causes of Action.** On the Effective Date, all authority and discretion to pursue, settle, or compromise the Unresolved Causes of Actions shall be assigned to the Liquidation Trustee. The Liquidation Trustee shall hold the Unresolved Causes of Actions in trust for the benefit of the Debtor's Creditors and all recoveries from those assigned Unresolved Causes of Action shall be placed into the Liquidation Trust.

**(2) Objections to Claims and Administrative Expense Claims.** On the Effective Date, the right to file, prosecute, litigate and settle objections to Claims and objections to Administrative Expense Claims, whether or not the subject of litigation pending as of the Effective Date, shall be deemed automatically transferred from the Debtors to the Liquidation Trustee.

**(c) Compensation.** The Liquidation Trustee will be compensated as provided in the Liquidation Trust Agreement. The Liquidation Trustee shall be required to file a

notice with the Bankruptcy Court regarding claims for compensation, which notice shall be served upon the United States Trustee. If no objection is received within ten (10) days from the date of service of the notice, the compensation shall be deemed approved without further notice or hearing.

**3.5 Debtors' Books and Records.** All right, title and interest in and to the Debtors' books and records shall vest in the Liquidation Trust as of the Effective Date. From and after the Effective Date, the Liquidation Trust shall bear the cost and expense of storage of such books and records. The Liquidation Trustee may, with approval of the Bankruptcy Court after notice to parties in interest and an opportunity for a hearing, dispose of the books and records of the Debtor in accordance with the Bankruptcy Court's direction.

ARTICLE 4

TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Fourth Amended Plan does not classify Administrative Claims or Priority Tax Claims. Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 4 in full satisfaction, release and discharge thereof.

4.1     **Administrative Bar Date**. Except as otherwise specifically provided for in this Fourth Amended Plan, requests for payment of Administrative Expenses must be filed no later than the Administrative Bar Date. Holders of Claims for payment of Administrative Expenses that do not file requests for the payment of Administrative Expenses on or before the Administrative Bar Date, shall be forever barred from asserting such Claims against the Debtors or their property.

17

4.2     **Professionals' Compensation and Reimbursement**. (a) No later than three

(3) days prior to the Effective Date, each Professional shall provide the Debtors, the Proponent and

the U.S. Trustee with an estimate of the total amount of compensation and expenses for which such

Professional expects to seek final compensation pursuant to section 330 of the Bankruptcy Code.

Such estimates shall include estimated sums for the preparation and prosecution of any application

for final compensation.

(b)     All Professionals shall file final applications for approval of

compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of

the Bankruptcy Code no later than ten (10) days following the Effective Date.  Any such application

timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Judicial Order

by the Bankruptcy Court approving such application.  Objections to any Professionals' application

for compensation or reimbursement must be timely filed and served upon such Professional and the

Liquidation Trustee in accordance with the Bankruptcy Rules.  Notwithstanding the foregoing, the

Liquidation Trustee shall have forty-five (45) days from the Effective Date to challenge any such

Administrative Claims filed, or such longer time as the Bankruptcy Court may authorize.  Any such

objection not timely filed and served shall be deemed to have been waived.  Upon entry of a Judicial

Order approving an application, the fees shall be paid within three (3) days thereafter or in

accordance with an agreement between the parties with respect thereto.

4.3     **Administrative Claims**.  Subject to the provisions of Article 10 of the Fourth

Amended Plan with respect to Disputed Claims, each Administrative Claim, to the extent not

previously paid, shall be paid by the Liquidation Trustee in Cash in full on (i) the later of (a) the

Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Liquidation Trustee and the holder of such Claim. Administrative Claims shall be paid from the Liquidation Trust Assets.

4.4    **Priority Tax Claims**.  Subject to the provisions of Article 10 of the Fourth Amended Plan with respect to Disputed Claims, all Priority Tax Claims held by Governmental Units shall be paid by the Liquidation Trustee, in Cash, in full either (i) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Liquidation Trustee and such Governmental Units.  Administrative Claims shall be paid from the Liquidation Trust Assets.

4.5    **Bankruptcy Fees.**  All fees and charges assessed against the Debtors under section 1930 of title 28 of the United States Code shall be paid by the Liquidation Trust Assets, in Cash in full as required by statute and until the closing of this Case, the Liquidation Trustee shall continue to be responsible for the payment of any such fees and charges.  Bankruptcy Fees shall be paid from the Liquidation Trust Assets.

## ARTICLE 5

### CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article 4, Allowed Claims and Allowed Interests are classified as set forth in this Article 5.  A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise

satisfied prior to the Effective Date.

5.1     **Class 1 – CFA Secured Claim.** Class 1 consists solely of the Secured Claim of CFA.

5.2     **Class 2 – Classified Priority Claims.** Class 2 consists of all Allowed Claims, other than Administrative Claims, Bankruptcy Fees, and Priority Tax Claims (which are unclassified and provided for elsewhere) to the extent entitled to priority under section 507 of the Bankruptcy Code.

5.3     **Class 3 – Unsecured Claims.** Class 3 consists of all Unsecured Claims against the Debtors, including but not limited to, any Deficiency Claims against Debtors.

5.4     **Class 4 – Allowed Interests.** Class 4 consists of all Allowed Interests.

## ARTICLE 6

### TREATMENT OF UNIMPAIRED CLAIMS AND INTERESTS

Allowed Claims in Class 2 are not impaired and shall receive the following treatment under the Fourth Amended Plan in full satisfaction, release and discharge thereof.

6.1     **Class 2 - Priority Claims.** In full satisfaction, release and discharge of the Priority Claims, the holders of Priority Claims shall receive the following treatment: on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Priority Claim shall receive payment from the Liquidation Trustee, (i) in Cash, in the full amount of its Priority Claim, or (ii) as may be otherwise agreed in writing by the Liquidation Trustee and the

holder of such Claim. Priority Claims will be paid from the Liquidation Trust Assets and also, provided CFA is not the successful Purchaser, from the Excess Proceeds, if any.

ARTICLE 7

**TREATMENT OF IMPAIRED CLAIMS AND INTERESTS**

Allowed Claims in Classes 1 and 3 and Allowed Interests in Class 4 are impaired and shall receive the following treatment under the Fourth Amended Plan in full satisfaction, release and discharge thereof.

7.1. **Class 1 – CFA Secured Claim.** Upon the completion of the Public Auction Sale, if CFA is the Purchaser it shall receive the consideration provided for in section 7.1.1 hereof, the provisions of which are set forth below. In the event Proponent is not the Purchaser of the Properties, CFA shall receive the consideration provided for in section 7.1.2 of the Fourth Amended Plan, the provisions of which are also set forth below.

7.1.1. In full and complete satisfaction of its Allowed Claim, CFA or its successor and or assign shall receive, on a date no later than ten (10) days after the entry of the Sale Approval Order, a deed transferring title to the Properties free and clear of all liens, claims and encumbrances in exchange for CFA's Credit Bid in the sum of $10,000,000.00 and CFA's release of any Deficiency Claim against Debtors (but not with respect to any guarantors of the CFA Loan) or right to the CFA Cash Collateral, **or**

7.1.2 In full and complete satisfaction of its Allowed Claim, on a date no later than three (3) days after the closing to the Purchaser, CFA shall: (a) receive all Sale

21

Proceeds up to an amount equal to the CFA Credit Bid, plus 75% of Sale Proceeds in excess of the Minimum Overbid that remain after the payment of the applicable Broker's Commission ("Net Sale Proceeds"), up to CFA's Maximum Recovery of $10,375,000.00; (b) release its lien on the CFA Cash Collateral and (c) waive its Deficiency Claim against Debtors (but not with respect to any guarantors of the CFA Loan). The CFA Cash Collateral and all Sale Proceeds not payable to CFA shall be utilized to pay Allowed Claims in the order of priority as provided for in the Bankruptcy Code and this Amended Fourth Amended Plan. Any amounts in excess of the payments due to CFA and the Broker under this Amended Fourth Amended Plan shall be referred to herein as the "Excess Proceeds".

7.2    **Class 3 – Unsecured Claims.** (a)   In full satisfaction, release and discharge of the Unsecured Claims (including Deficiency Claims, except the CFA Deficiency Claim against Debtors (but not with respect to any guarantors of the CFA Loan), which shall be waived pursuant to this Fourth Amended Plan), the holder of an Allowed Unsecured Claim shall receive within thirty (30) days from the closing of the sale of the Properties to the Purchaser, payment in cash, equal to its Pro Rata share of Available Cash (which payments shall be subject nonetheless to the Conditional Payments Schedule defined below).

(b)    The payments made by the Liquidation Trustee to Allowed Claims in Class 3 shall be made with the presumption that all then existing Disputed Claims will be deemed Allowed Claims. Thereafter (and continuing until there are no more Disputed Claims in Class 3 or in Classes with priority to Class 3), when and in the event that any Disputed Claim is not deemed an Allowed

22

Claim (the amount of such rejected Disputed Claim being the "Released Disputed Capital"), the Liquidation Trustee shall make additional disbursements to the Allowed Claims in Class 3 in an amount representing each Allowed Claims' pro-rata share of such Released Disputed Capital (such procedure being the "Conditional Payments Schedule").

7.3    **Class 4 - Allowed Interests**.  On the Effective Date, all Allowed Interests in the Debtors shall be cancelled and paid their Pro Rata share of any remaining Available Cash after the payment of all other Claims.

ARTICLE 8

TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1    **Assumption and Assignments of Executory Contracts and Unexpired Leases.**  On the Effective Date, all Executory Contracts and Unexpired Leases to which Debtor is a party shall be deemed rejected in accordance with Section 365 of the Bankruptcy Code, except for the residential leases of tenants at the Properties which are set forth on the Debtors' Schedule G.  On or before the Effective Date, the Debtors shall transfer any and all security deposits for all tenants at the Properties to the Liquidation Trustee along with any documentation pertaining to the Properties including but not limited to original leases, Certificates of Occupancy and any and all DHCR records.

8.2    **Rejection Claims.**  Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtors pursuant to section 8.1 of the Fourth Amended Plan shall be treated as Unsecured Claims.

23

8.3     **Bar to Rejection Claims.** A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 8.1 of the Fourth Amended Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Liquidation Trustee within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order, or (ii) the Confirmation Date. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtors, or its successors or their respective properties.

## ARTICLE 9

## Implementation of the Fourth Amended Plan

9.1     **Implementation.** The Debtors shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Fourth Amended Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtors and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property required by the Fourth Amended Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Fourth Amended Plan.

9.2     **Sale of Assets**. (A) In order to further fund the distributions under the Fourth Amended Plan, the Liquidation Trustee shall conduct the Public Auction Sale, which will

be held on a date no later than sixty (60) days after the Effective Date and will be conducted in

accordance with the following terms and conditions for the Public Auction Sale (the "Bidding

Procedures"):

(a) The Public Auction Sale of the Properties will be conducted by the Liquidation Trustee on a date and at a location to be determined by the Liquidation Trustee, which date shall be no later than sixty (60) days after the Effective Date, upon the following terms and conditions;

(b) An offer for the purchase of the Properties must be a Qualified Competing Bid (as defined below) made by a Qualified Competing Bidder, as provided herein;

(c) A Qualified Competing Bid shall consist of a timely and unconditional offer (subject nonetheless to any Qualified Financing Contingency Agreement set forth below) for the purchase of the Properties made by a Qualified Competing Bidder, in accordance with the terms hereof and accompanied by (i) a 10% deposit as provided for herein, (ii) a written offer to purchase the Properties for an amount not less than the Minimum Overbid and (iii) an acknowledgement that he, she or it has read and understands these Bidding Procedures and agrees to abide by and to be bound by them ("Qualified Competing Bid");

(d) An offer for the purchase of the Properties must be submitted by a party which demonstrates an financial ability to consummate the purchase of the Properties (a "Qualified Competing Bidder");

(e) Each offer must be served five (5) days in advance of the Public Auction Sale upon the Liquidation Trustee, Fred Ringel, Esq. c/o Robinson Brog Robinson Brog Leinwand Greene Genovese & Gluck P.C. 1345 Avenue of the Americas, 31st Floor, New York, New York 10105-0143 Phone: 212-603-6300 and Proponent's counsel, Kriss & Feuerstein LLP, 360 Lexington Avenue, Suite 1200, New York, New York 10017 Attn: Jerold C. Feuerstein, accompanied by evidence satisfactory to the Liquidation Trustee, of the willingness and financial ability of the Qualified Competing Bidder to consummate the transaction no later than fifteen (15) days after entry of the Sale Approval Order;

(f)     Proponent shall be deemed to be a Qualified Competing Bidder and the CFA Credit Bid, a Qualified Competing Bid;

(g)     Each Qualified Competing Bidder (other than Proponent) making a Qualified Competing Bid must deliver the Liquidation Trustee, Fred Ringel, Esq. c/o Robinson Brog Leinwand Greene Genovese & Gluck P.C. 1345 Avenue of the Americas, 31st Floor, New York, New York 10105-0143 at the time of making such Qualified Competing Bid, a deposit in an amount equal to at least 10% of its Qualified Competing Bid (the "Deposit");

(h)     The Deposit shall be made in immediately available funds (cashier's check, certified check, irrevocable letter of credit, wire transfer or cash);

(i)     If a Qualified Competing Bidder becomes the Purchaser, its Deposit shall be deemed to be non-refundable and shall be forfeited to the Debtors' Estate if such Purchaser fails to close for any reason whatsoever, subject only to the strict compliance with any Qualified Financing Contingency Agreement (as defined below);

(j)     If a Qualified Competing Bidder does not become the Purchaser or the Backup Bidder (as defined below), its Deposit shall be returned to it within three (3) business days after the conclusion of the Public Auction Sale, *provided however,* that the deposit tendered by the Backup Bidder shall be held by the Proponent's counsel until three (3) business days after the closing of the sale to the Purchaser unless the Proponent indicates its intention to close on the Backup Bid, in which case the Backup Bidder's deposit shall be credited to the purchase price or forfeited to the Debtors estate as liquidated damages (subject to CFA's Liquidated Damages Claim, as defined below), as the case may be;

(k)     A Qualified Competing Bid must contain an irrevocable offer to purchase all of the Properties;

(l)     A Qualified Competing Bid must contain material terms and conditions no less favorable to the Debtors' estate, than the CFA Credit Bid;

(m)     A Qualified Competing Bid may be contingent upon financing up to 65% of the Qualified Competing Bid, so long as the Qualified

26

Competing Bidder enters into a Qualified Financing Contingency Agreement (as set forth below) and is in any event able to close on or before the Drop-Dead Closing Date (as defined below) if the Qualified Competing Bidder is the Purchaser.

(n)     A Qualified Competing Bid must provide for a closing date on or before fifteen (15) days after entry of the Sale Approval Order (as defined below), with time being of the essence as against the Purchaser (the "Drop-Dead Closing Date");

(o)     At the Liquidation Trustee's reasonable discretion, any Qualified Competing Bid made by any Qualified Competing Bidder (other than Proponent) who does not attend the Public Auction Sale may be treated as waived and revoked;

(p)     At the time and place of the Public Auction Sale, if one or more Qualified Competing Bids have been timely submitted, and neither wishes to submit a revised, higher and better bid on the record, the highest and best Qualified Competing Bid and such bidder shall be deemed to be the Purchaser;

(q)     At the time and place of the Public Auction Sale if one or more Qualified Competing Bids have been timely submitted, the Liquidation Trustee shall conduct an Public Auction Sale among purchasers and any Qualified Competing Bidder or Bidders that has or have submitted a Qualified Competing Bid or Bids;

(r)     The minimum opening bid at the Public Auction Sale, (other than the bid of Proponent) shall not be less than the Minimum Overbid;

(s)     Subsequent bids made on the record at the Public Auction Sale shall be in minimum increments of $25,000.00;

(t)     At such time as it appears to the Liquidation Trustee, in the exercise of his reasonable discretion, that none of the Qualified Competing Bidders present at the Public Auction Sale are prepared to advance the bidding, the Liquidation Trustee shall (after giving fair warning, on the record, to those entities present) close the bidding on the record and the entity which immediately prior to the close of the bidding shall have submitted the highest and best offer for the purchase of the Properties shall be declared the successful Purchaser;

27

(u)    In the event that the Purchaser is an entity other than Proponent, then such Purchaser shall be bound by all of the terms of this Fourth Amended Disclosure Statement and the Fourth Amended Plan;

(v)    The Qualified Competing Bid which is second highest at the Public Auction Sale shall be designated as the "Backup Bid" and the second highest Qualified Competing Bidder as the "Backup Bidder" and the Liquidation Trustee shall be authorized to close on a sale to the Backup Bidder in the event the successful bidder fails to close on the sale, *provided however*, that the Proponent shall give the Backup Bidder no less than ten (10) calendar days notice of the successful bidders failure to close and the Liquidation Trustee's intention to close on the Backup Bid (the "Backup Bid Drop-Dead Closing Date") (The Backup Bid Drop-Dead Closing Date or the Drop-Dead Closing Date, as the case may be, being the "Relevant Drop-Dead Closing Date");

(w)    The Purchaser of the Properties shall be deemed a purchaser in good faith of the Debtors' Properties and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code;

(x)    Within fifteen (15) days of the Sale Approval Order, the Liquidation Trustee will convey all rights and interest in and to the Properties free and clear of all liens and encumbrances (in accordance with §363(f)) to the Purchaser. The Purchaser will expressly acknowledge and agree that any warranties of any kind or nature whatsoever, express or implied, concerning the Properties, including without limitation, any warranties as to title, suitability for any purpose, merchantability, tenants and any other warranties or representations as to the ownership, physical condition, quality or quantity of them, will be expressly disclaimed. The Purchase will acknowledge that the Properties are being sold "AS IS" "WHERE IS" and "with all faults" and any residential leases set forth on each Debtor's Schedule "G" shall remain in full force and effect following the Public Auction Sale and conveyance of title to the Purchaser.

(y)    Notwithstanding anything to the contrary containing in the foregoing Bidding Procedures, the failure of such prevailing Qualified Competing Bid (or the Backup Bidder, as the case may be) to close on or before the Drop-Dead Closing Date (or the Backup Bidder Drop-Dead Closing Date, as the case may be) will result in the forfeiture of such party's 10% deposit (half of which will be distributed outside of the Fourth Amended Plan by the Liquidation

Trustee to CFA as liquidated damages with respect to the CFA Credit Bid (the "CFA's Liquidated Damages Claim") and the other half of which will be added to the Debtors' estate to be made available for distribution to the Class 3 Unsecured Creditors and otherwise in accordance with the Fourth Amended Plan; *provided, however,* that such party will be entitled to the return of its 10% deposit to the extent it has entered into a Qualified Financing Contingency Agreement with the Liquidation Trustee and such party has timely elected to terminate its obligation to close under and in strict accordance with the terms and conditions of such Qualified Financing Contingency Agreement, if any.

(z)     A "Qualified Financing Contingency Agreement" shall mean an agreement (or provision in a written agreement to purchase) that is acceptable to the Liquidation Trustee, in its reasonable discretion, but in any event, shall: (i) strictly comply with the terms of this Disclosure Statement and the Fourth Amended Plan, and (ii) limit the amount of financing to no more than 65% of the Qualified Competing Bid, and (iii) provide that such Purchaser may only elect to terminate its obligations to close hereunder pursuant to and in accordance with the terms and conditions in the Qualified Financing Contingency Agreement (the "Qualified Election to Terminate") in writing within ten (10) days of becoming the successful bidder (or within five (5) days of being notified by the Liquidation Trustee of its intent to close with respect to a Backup Bidder, provided such Backup Bidder has also entered into a Qualified Financing Contingency Agreement). The failure to make a Qualified Election to Terminate will deem the successful bidder (or Backup Bidder, as the case may be) to have waived its right to terminate its obligations to close pursuant to the Qualified Financing Contingency Agreement and will require the successful bidder (or Backup Bidder, as the case may be) to close on or before the Relevant Drop-Dead Closing Date or forfeit its 10% deposit (in which case such 10% deposit will be distributed in accordance with subsection (y) above).

*Parties in interest who desire to bid for the Properties are strongly urged to make their own physical inspection of the Properties.*

(B)     Additionally, the Liquidation Trustee shall make the Properties and the

Debtors' business records available to any prospective Purchaser of the Properties to conduct due

diligence prior to the Public Auction Sale.

(C)     Within ten (10) days of the Public Auction Sale, the Liquidation Trustee shall make a motion for an order approving the results of the Public Auction Sale, which order shall include, without limitation, approval of the sale to the Purchaser, the Backup Bidder, and that the Public Auction Sale was conducted in accordance with the Bankruptcy Code and Fourth Amended Plan and Fourth Amended Disclosure Statement (the "Sale Approval Order").

9.3     **Transfer of Assets.**  On or before the Effective Date, the Properties shall be transferred to Liquidation Trustee, in accordance with and upon the terms and conditions set forth in the Fourth Amended Plan, Fourth Amended Disclosure Statement, and Liquidation Trust Agreement.

9.4     **Transfer Taxes.**  (a)  Pursuant to section 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Fourth Amended Plan shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax (each being a "Property Sale Tax"), and, to the extent provided by section 1146(a), if any, shall not be subject to any state, local or federal law imposing sales tax.  Proponent believes that the sale of the Properties will fall under the exemptions from Property Sale Tax set forth in §1146(a) of the Bankruptcy Code, a discussion of such exemption is more fully set forth in the decision of the Supreme Court in <u>Florida Department of Revenue v. Piccadilly Cafeterias, Inc.</u>, 128 S.Ct. 2326 U.S., (2008), as the sale of the Properties is proposed to be made pursuant to a plan confirmed under §1129 of the Bankruptcy Code.  However, in the event that Property Sale Tax is

applicable to the sale of the Properties sold in accordance with this Fourth Amended Plan, it is understood that such Property Sale Tax is a liability of the Debtors' estate, and as such, in no event shall CFA's net distribution received under this Fourth Amended Plan (whether pursuant to CFA's Credit Bid, or pursuant to a higher and better offer subject to the Minimum Overbid requirements) be in an amount less than $10,000,000.00.

       9.5    **Cooperation of Debtors.**  The Debtors and its Interest Holders (or, subsequent to the liquidation of the Debtors, its former Interest Holders) shall, at all times, reasonably cooperate with the Purchaser, and any of their successors and assigns.

       9.6    **Vesting of Assets.**  Except as otherwise provided in the Fourth Amended Plan, on the Effective Date all of the assets and properties of the Debtors' Estate shall vest in the in Liquidation Trust, and shall be held in accordance with and upon the terms and conditions set forth in the Fourth Amended Plan, Fourth Amended Disclosure Statement, and Liquidation Trust Agreement. Immediately prior to the transfer of the Properties to the Purchaser thereof, such Properties shall be deemed to be and Purchaser shall purchase such Properties pursuant to this Fourth Amended Plan free and clear of all Liens, Claims and encumbrances, including but not limited to the Claims of real estate brokers, and any and all Liens, Claims and encumbrances (other than usual and customary encumbrances such as utility easements and the like) that have not been expressly preserved under the Fourth Amended Plan shall be deemed extinguished as of such date.

9.7    **Funding.**  Except as set forth elsewhere in the Fourth Amended Plan all payments required to be made under the Fourth Amended Plan shall be made by the Liquidation Trustee and shall be funded from Liquidation Trust Assets.

9.8    **Dissolution of the Debtors.**  As soon as practicable after the closing of the sale of the Debtors' Properties under this Fourth Amended Plan, the Debtors shall be liquidated in accordance with applicable non-bankruptcy law.

9.9    **Execution of Documents.**

(a) On the Effective Date, the Debtors, and any necessary party thereto, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Fourth Amended Plan.  In the event that the Debtors fail or refuse to execute any document in furtherance of this Fourth Amended Plan on or before the Effective Date, the Fourth Amended Plan Proponent and/or the Liquidation Trustee may execute any and all documents in the name of the Debtors in furtherance of the Fourth Amended Plan and such execution shall be binding upon the Debtors.

(b)    Except as otherwise provided in the Fourth Amended Plan, all assets transferred (i) by the Debtors or (ii) by any non-debtors third party in accordance with the terms of the Fourth Amended Plan shall be, as of the date such Properties or other assets are transferred to the Purchaser thereof (or Fourth Amended Plan recipient thereof, respectively) in accordance with this Fourth Amended Plan, deemed to be free and clear of all Liens, Claims and encumbrances, and any and all Liens, Claims and encumbrances (other than usual and customary

32

encumbrances such as utility easements and the like) that have not been expressly preserved under the Fourth Amended Plan shall be deemed extinguished as of such date.

(c)     Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtors shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtors' compliance with the provisions of the Fourth Amended Plan) not expressly preserved in the Fourth Amended Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

9.10    **Filing of Documents.** Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Fourth Amended Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Fourth Amended Plan.

9.11    **Preservation of Rights of Action.** (a) The Liquidation Trustee shall retain, and in accordance with its determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under sections 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtors as of the Petition Date, or the Estate, and arising under any

provision of state or federal law, or any theory of statutory or common law or equity. Unresolved Causes of Action shall be assigned to the Liquidation Trustee. The potential proceeds from these Unresolved Causes of Action are uncertain and speculative and therefore, no value has been assigned to such recoveries. The Liquidation Trustee reserves the right, to continue to prosecute the Unresolved Causes of Action, whether arising prior to or after the Petition Date.

(b)     Any recovery received by the Liquidation Trustee through the prosecution, settlement or collection of any such claim, right or cause of action, shall be retained by the Debtors following the satisfaction of all other Allowed Claims under the terms of the Fourth Amended Plan.

(c)     Notwithstanding any provision of the Fourth Amended Plan to the contrary, definitions and descriptions contained herein respecting Pre-Petition Date documents, agreements or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtors of the existence, validity allowance, or amount of any such claim, document or agreement.

(d)     From and after the Effective Date hereof, the court appointed Liquidation Trustee, or a court appointed post-confirmation Trustee ("Post-Confirmation Trustee") shall specifically retain the right to pursue any causes of action related to payments made from CFA's Cash Collateral without the authority of this Court, including without limitation, payments to insiders of the Debtors.

# ARTICLE 10

## PROVISIONS GOVERNING DISTRIBUTIONS

10.1 **Liquidation Trustee.** The Liquidation Trustee shall distribute all cash or other property to be distributed under the Fourth Amended Plan. The Liquidation Trustee will serve pursuant to the terms of the Liquidation Trust Agreement. Such compensation agreement shall provide for the payment of reasonable compensation for the services the Liquidation Trustee renders pursuant to the Fourth Amended Plan and reimbursement of its reasonable out-of-pocket expenses (including the cost of any bond required to be posted in accordance with the terms of the Confirmation Order) incurred in connection with providing such services on such terms as are agreed to in writing and approved by the Court. Pending the final distribution of all sums distributable under the terms of the Fourth Amended Plan (including the delivery to the Debtors of unclaimed distributions pursuant to section 10.14 of the Fourth Amended Plan), the Liquidation Trustee shall be deemed to be an officer of the Debtors with full authority to sign checks on any bank account of the Debtors to the extent necessary to make any payment or distribution contemplated by the Fourth Amended Plan. The Liquidation Trustee shall not cancel its bond without notice to the Office of the U.S. Trustee.

10.2 **Timing of Distributions Under the Fourth Amended Plan.** Subject to sections 10.6 and 10.8 of the Fourth Amended Plan, any payments, distributions or other performance to be made pursuant to the Fourth Amended Plan on account of any Disputed Claim shall be deemed to be timely made if made on or within five days following the later of (i) the

Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim or (iii) such other times provided in the Fourth Amended Plan.

10.3    **Method of Payment.** Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Fourth Amended Plan shall be made at the option of the Liquidation Trustee, in cash, by wire transfer or by a check drawn on a domestic bank. No distributions shall be made on Claims that are less than õne hundred dollars ($100.00) in amount, unless a request is made, in writing, to the Liquidation Trustee.

10.4    **Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, the Liquidation Trustee or the Post-Confirmation Trustee as the case may be, may file and serve any objection to any Claim or Interest at any time, but in no event after ninety (90) days after the Effective Date, unless otherwise directed by the Court.

10.5    **Prosecution of Objections.** After the Confirmation Date, only the Liquidation Trustee or the Post-Confirmation Trustee, as the case may be, shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. The Debtors, the Liquidation Trustee shall have the right to litigate to judgment, settle or withdraw any objection to any Claim or Interest.

10.6    **No Distribution Pending Allowance.** Notwithstanding any other provision of the Fourth Amended Plan, no payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Disputed Claim are resolved by Final Order or the time to object to any such Disputed Claim has expired.

10.7 **Escrow of Cash Distributions.** (a) On any date that distributions are to be made under the terms of the Fourth Amended Plan, the Liquidation Trustee shall deposit in one or more segregated accounts, Cash or property equal to 100% of the cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expenses or as priority claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any disputed Cure Amount, and (iv) any amount due but not payable on the Effective Date on account of Administrative Expenses or claims entitled to priority pursuant to section 503 and 507 of the Bankruptcy Code. The Liquidation Trustee shall also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto and being referred to herein as the "Disputed Claim Reserve".

(b) The Liquidation Trustee or the Post-Confirmation Trustee as the case may be, shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property that must be so deposited on account of any Disputed Claim. Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim, or any other Entity or property if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited. Such Creditor shall have recourse first, to the undistributed assets in

the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order, or not yet resolved, and second any unpaid amount shall be an obligation of the Debtor.

10.8 **Distribution After Allowance.** Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Liquidation Trustee shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

10.9 **Investment of Segregated Cash and Property.** To the extent practicable, the Liquidation Trustee may invest any Cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however,* that the Liquidation Trustee shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

10.10 **Distribution After Disallowance.** The cash and other property segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof remaining after all Disputed Claims have been resolved by Final Order shall be paid for Allowed Claims in their order of priority under the Bankruptcy Code.

10.11 **Surrender of Instruments; Execution of Satisfactions and Releases.** (a) Notwithstanding any other provision of the Fourth Amended Plan, no Creditor, that holds a note

or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Debtors (or the Liquidation Trustee) at the sole cost and expense of such Creditor.

(b)     Any cash or property to be distributed pursuant to the Fourth Amended Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to section 8.13 of the Fourth Amended Plan.

(c)     In the event any Creditor is unable to surrender a Note or other instrument evidencing a Claim against the Debtors that has been destroyed, lost or stolen, such Entity may receive a distribution with respect to such Claim by presenting to the Liquidation Trustee, in a form acceptable to the Liquidation Trustee:  (i) proof of such Entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Liquidation Trustee and all other Entities deemed appropriate by the Liquidation Trustee from any loss, action, suit or any claim whatsoever which may be made as a result of such Entity's receipt of a distribution under the Fourth Amended Plan.

(d)     All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court.  Neither the Debtor nor the Liquidation Trustee shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

10.12 **Delivery of Distributions.** Except as provided in sections 10.13, 10.14 and 10.15 of the Fourth Amended Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Liquidation Trustee after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Liquidation Trustee has not received a written notice of a change of address.

10.13 **Undeliverable Distributions.** (a) If the distribution to the holder of any Claim or Interest is returned to the Liquidation Trustee as undeliverable, no further distribution shall be made to such holder unless and until the Liquidation Trustee is notified in writing of such holder's then current address. Undeliverable distributions shall remain in the possession of the Liquidation Trustee until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section 10.14 of the Fourth Amended Plan.

(b)     Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to section 10.14 of the Fourth Amended Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Liquidation Trustee shall make distributions of all Cash and property that has become deliverable during the preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

40

(c)     Nothing contained in the Fourth Amended Plan shall require the Debtors or the Liquidation Trustee to attempt to locate any holder or an Allowed Claim of an Allowed Interest.

10.14 **Unclaimed Distributions.**     The Liquidation Trustee will hold any Unclaimed Distribution and will not be required to take any further action with respect to the delivery of the Unclaimed Distribution. If the Person entitled to such Unclaimed Distribution does not present itself to the Liquidation Trustee within ninety (90) days following the distribution date, the Unclaimed Distribution will go back into the Liquidation Trust for the benefit of other Holders of Claims in the same class as the Holder of the Unclaimed Distribution, and the Unclaimed Distribution will be distributed to such other Persons in accordance with the Fourth Amended Plan terms on the next succeeding distribution date.

10.15 **Set-offs.** The Liquidation Trustee may, but shall not be required to, set-off against the distributions to be made pursuant to the Fourth Amended Plan the claims, obligations, rights, causes of action and liabilities of any nature that the Debtors may hold against the holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtors or the Liquidation Trustee of any such claims, obligations, rights, causes of action and liabilities that the Debtors or the Liquidation Trustee has or may have against such holder.

# ARTICLE 11

## INJUNCTION AND EXCULPATION

11.1 **Injunction.** Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the parties released, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the released parties for any liability whatsoever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government o any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the released parties.

11.2 **Limitation of Liability.** Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan. Pursuant to section 1125(e), as set forth in Article 11 of the Plan, neither the Proponent, nor its respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by

any of them shall be liable on account of the solicitation or participation of the Fourth Amended Plan for violation for any applicable law, rule or regulation governing solicitations of acceptance or rejections of a plan except for (i) willful misconduct and gross negligence.

The Debtors and their respective officers, directors, members, general partner, managers or employees (acting in such capacity) are not entitled to a discharge because (a) the Fourth Amended Plan is a liquidating Plan (b) the Debtors will not be engaging in business after the consummation of the Fourth Amended Plan, and (c) the Debtors would not be entitled to a discharge under 11 U.S.C. 727(a).

## ARTICLE 12

### MISCELLANEOUS PROVISIONS

12.1    **Orders in Aid of Consummation.**  Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Fourth Amended Plan.

12.2    **Compliance with Tax Requirements.**  In connection with the Fourth Amended Plan, the Debtors and, where applicable the Liquidation Trustee, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Fourth Amended Plan shall be subject to such withholding and reporting requirements; *providing, however,* that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

12.3 **Due Authorization by Creditors.** Each and every Creditor who accepts the distributions provided for under the Fourth Amended Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Fourth Amended Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Fourth Amended Plan, or obligations undertaken by such Creditor under the Fourth Amended Plan.

12.4 **Amendment.** This Fourth Amended Plan amends and fully supersedes that certain Consolidated Plan of Liquidation of Debtors as Proposed by CFA W. 111 Street, L.L.C., filed with this court by Proponent on August 14, 2009, as amended by that certain First Amended Consolidated Plan of Liquidation of Debtors as Proposed by CFA W. 111 Street, L.L.C., filed with this court by Proponent on August 31, 2009.

12.5 **Further Amendments.** The Fourth Amended Plan may be altered, amended or modified by the Proponent, in writing, signed by the Proponent, at any time before the substantial consummation of the Fourth Amended Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

12.6 **Revocation.** The Proponent may revoke or withdraw the Fourth Amended Plan at any time prior to entry of the Confirmation Order. If the Fourth Amended Plan is revoked or withdrawn or if no Confirmation Order is entered, the Fourth Amended Plan shall be null and void, and nothing contained in the Fourth Amended Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors; or (ii) prejudice in any

manner the rights of the Debtors or any other party in any further proceedings involving the Debtors or their Estate.

12.7 **Request for Relief Under Section 1129(b).** If the Fourth Amended Plan is accepted by one or more, but not all impaired Classes of Creditors, the Proponent may request confirmation under section 1129(b) of the Bankruptcy Code of any Class of Creditors, subject to any modification of the Fourth Amended Plan made pursuant to section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019.

12.8 **Filing of Additional Documents.** Except as otherwise provided in the Fourth Amended Plan, on or before the Effective Date, the Debtors or Proponent may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Fourth Amended Plan, and Debtors shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree. Debtors shall also pay any fees due the U.S. Trustee's Office until entry of a Final Decree (it being understood that the U.S. Trustee shall be paid one (1) fee for the consolidated Estate of Debtors).

12.9 **Section Headings.** The section headings contained in the Fourth Amended Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Fourth Amended Plan.

12.10 **Computation of Time.** In computing any period of time prescribed or allowed by the Fourth Amended Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

12.11 **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Fourth Amended Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

12.12 **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)     if to the Debtor to Carl Person, Esq. 325 West 45th Street, New York, New York 10036;

(b)     if to Proponent, to Kriss & Feuerstein LLP, Attn:   Jerold C. Feuerstein, 360 Lexington Avenue, Suite 1200, New York, New York 10017.

(c)     if to any Creditor or Interest holder at (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Liquidation Trustee after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Liquidation Trustee has not received a written notice of a change of address.

(d)     if to any Entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

12.13 **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the

Fourth Amended Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

12.14 **Other Actions.** Nothing contained herein shall prevent the Debtors, Interest Holders, or Creditors from taking such actions as may be reasonably necessary to consummate the Fourth Amended Plan, although such actions may not specifically be provided for within the Fourth Amended Plan.

12.15 **Severability.** In the event any provision of the Fourth Amended Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Fourth Amended Plan.

12.16 **Business Day.** In the event that the Fourth Amended Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

ARTICLE 13

RETENTION OF JURISDICTION

13.1 **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a) Insure that the Fourth Amended Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtors and any other necessary party, to take such action and execute such documents to effectuate the Fourth Amended Plan;

(b)     Consider any modification of the Fourth Amended Plan proposed pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)     Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d)     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Fourth Amended Plan, for any period ending on or before the Effective Date;

(e)     Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)     Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Fourth Amended Plan;

(g)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(h)     Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Fourth Amended Plan and all contracts, instruments,

releases and other agreements or documents created in connection with the Fourth Amended Plan or Disclosure Statement or to enforce all orders, judgments, injunctions (including, but not limited to any injunction with respect to a guaranty claims), and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of the Fourth Amended Plan;

(i)     Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Fourth Amended Plan or any Entity's obligations incurred in connection with the Fourth Amended Plan;

(j)     Modify the Fourth Amended Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Fourth Amended Plan or Disclosure Statement;

(k)     Remedy any defect or omission or reconcile any inconsistency in any Order, the Fourth Amended Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Fourth Amended Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)     Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Fourth Amended Plan;

(m)     Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)     Determine any dispute arising under or related to the Fourth Amended Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Fourth Amended Plan or the Confirmation Order.

(o)     Determine any other matters that may arise in connection with or relate to the Fourth Amended Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Fourth Amended Plan or Disclosure Statement;

(p)     Enter an Order confirming that the sale of the Properties by the Liquidation Trustee has been consummated in compliance with the Fourth Amended Plan and the Bankruptcy Code, including, without limitation, §§ 363(m) and (f) thereof; and

(q)     Enter an Order or Final Decree concluding the Case.

13.2    **Post-Closing Jurisdiction.** Notwithstanding the entry of a final decree or an Order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of the Fourth Amended Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtors.

## ARTICLE 14

### CONDITION TO THE EFFECTIVE DATE

14.1    **Condition Precedent to Effectiveness**. The Fourth Amended Plan shall not become effective unless and until it has been confirmed.

## ARTICLE 15

### CLOSING THE CASE

15.1    **Substantial Consummation.**  Substantial Consummation of the Plan shall be deemed to occur upon the Effective Date, which is the date upon which the Properties and such other assets of the Debtors' Estate are transferred to the Liquidation Trustee as provided for in this Fourth Amended Plan.  Until the occurrence of the Effective Date and Substantial Consummation of the Fourth Amended Plan, the Liquidation Trustee, Debtors, Debtors' property and its Creditors shall be subject to further Orders of the Bankruptcy Court.

15.2    **Closing the Case.**  Upon the sale of the Properties by the Liquidation Trustee and distribution of the proceeds thereof in accordance with the Fourth Amended Plan, the Debtors shall expeditiously move for the entry of a final decree closing the Case and such other relief as may be just and appropriate.

**DATED:**  New York, New York
October 1, 2009

        **CFA W. 111 Street, L.L.C.**

        By:/s/    JOEL FOGEL
         **Joel Fogel,**
        **Officer of CFA W. 111 Street, L.L.C.**

        **KRISS & FEUERSTEIN LLP**
        **Attorneys for Proponent**
        360 Lexington Avenue, Suite 1200
        New York, New York 10017
        (212) 661-2900

        By: /s/ JEROLD C. FEUERSTEIN
          **Jerold. C. Feuerstein**